## UNITED STATES COURT OF INTERNATIONAL TRADE

-----------------------------------------------------------------------X

TABACOS DE WILSON, INC;           :
TOBACCO RAG PROCESSORS, INC.;        :
BROWN-USA, INC.;                     :
NIPPON AMERICA GROUP/OKURA USA INC.;   :
SKATE ONE CORPORATION; ALLIANCE      :
INTERNATIONAL, CHB, INC.;            :
C.J. HOLT & COMPANY, INC.;            :
CUSTOMS ADVISORY SERVICES, INC.       :
                                                :
      **Plaintiffs,**                 :
                                                  :       **No. 18-cv-00059**
       *v.*                           :
                                                  :
UNITED STATES OF AMERICA, U.S. CUSTOMS   :
& BORDER PROTECTION, STEVEN T.          :
MNUCHIN, in his official capacity as Secretary of the   :
Treasury, *and* KEVIN K. McALEENAN, in his     :
official capacity as Commissioner, U.S. Customs &   :
Border Protection,                   :
                                                  :
      **Defendants.**               :

-----------------------------------------------------------------------X

## <u>COMPLAINT</u>

Plaintiffs, TABACOS DE WILSON, INC. ("TABACOS"), TOBACCO RAG PROCESSORS, INC. ("TOBACCO RAG"), BROWN-USA, INC. ("BROWN"), NIPPON AMERICA/OKURA USA, INC. ("NIPPON AMERICA"), SKATE ONE CORPORATION ("SKATE ONE"), ALLIANCE INTERNATIONAL, CHB, INC. ("ALLIANCE"), C.J. HOLT & COMPANY, INC. ("C.J. HOLT"), and CUSTOMS ADVISORY SERVICES, INC. ("CAS"), by and through their undersigned counsel, for their Complaint in this matter against Defendants, the UNITED STATES OF AMERICA (the "GOVERNMENT"), U.S. CUSTOMS & BORDER PROTECTION ("CBP" or "CUSTOMS"), STEVEN T. MNUCHIN, in his official capacity as

Secretary of the Treasury, and KEVIN K. McALEENAN, in his official capacity as Commissioner of CBP, do hereby state, plead, and allege as follows:

## CAUSE OF ACTION

1.      This action is commenced pursuant to the Administrative Procedure Act, 5 U.S.C. §§ 551 *et seq.*, to seek declaratory and injunctive relief against Defendants with respect to the administration and enforcement of the duty drawback statute, Section 313 of the Tariff Act of 1930, 19 U.S.C. § 1313, and implementing regulations, 19 C.F.R. pt. 191.  In particular, this action seeks to compel agency action unlawfully withheld or unreasonably delayed, as provided in 5 U.S.C. § 706(1), and to set aside agency actions taken without observance of procedures required by law, in violation of 5 U.S.C. §706(2)(D).

## JURISDICTION AND VENUE

2.      This Court has exclusive jurisdiction over this action pursuant to 28 U.S.C. § 1581(*i*)(1), to the extent that the action arises out of a law of the United States providing for revenue from imports or tonnage; and under 28 U.S.C. § 1581(*i*)(4), to the extent that it involves the administration and enforcement of matters covered by 28 U.S.C. §§ 1581(a) (actions to commence the denial of a protest) and 1581(*i*)(1).

3.      This Court is the exclusive and appropriate venue for this action.

## PARTIES AND STANDING

4.      Plaintiff TABACOS DE WILSON, INC. is a corporation organized and existing under the laws of the State of North Carolina.  It is a participant in the United States duty drawback program, and regularly files claims for duty drawback.  It also holds a license to receive accelerated payment of drawback under Section 191.92 of the CBP Regulations, 19 C.F.R. § 191.92, which is

the best evidence of its contents, and has posted with CBP a continuous bond to secure the Government for the repayment of any accelerated drawback payments determined to have been made in error.

5.     Plaintiff TOBACCO RAG PROCESSORS, INC. ("TABACCO RAG") is a corporation organized and existing under the laws of the State of North Carolina.  It is a participant in the United States duty drawback program, and regularly files claims for duty drawback.  It also holds a license to receive accelerated payment of drawback under Section 191.92 of the CBP Regulations, 19 C.F.R. § 191.92, which is the best evidence of its contents, and has posted with CBP a continuous bond to secure the Government for the repayment of any accelerated drawback payments determined to have been made in error.

6.     Plaintiff BROWN-USA INC. ("BROWN") is a corporation organized and existing under the laws of the State of Florida.  It is a participant in the United States duty drawback program, and regularly files claims for duty drawback.  It also holds a license to receive accelerated payment of drawback under Section 191.92 of the CBP Regulations, 19 C.F.R. § 191.92, which is the best evidence of its contents, and has posted with CBP a continuous bond to secure the government for the repayment of any accelerated drawback payments determined to have been made in error.

7.     Plaintiff NIPPON AMERICA/OKURA USA INC. ("NIPPON AMERICA") is a corporation organized and existing under the laws of the State of Florida.  It is a participant in the United States duty drawback program, and regularly files claims for duty drawback.  It also holds a license to receive accelerated payment of drawback under Section 191.92 of the CBP Regulations, 19 C.F.R. § 191.92, which is the best evidence of its contents, and has posted with

CBP a continuous bond to secure the government for the repayment of any accelerated drawback payments determined to have been made in error.

8.      Plaintiff SKATE ONE CORPORATION is a corporation organized and existing under the laws of the State of California.  It is a participant in the United States duty drawback program, and regularly files claims for duty drawback.  It also holds a license to receive accelerated payment of drawback under Section 191.92 of the CBP Regulations, 19 C.F.R. § 191.92, which is the best evidence of its contents, and has posted with CBP a continuous bond to secure the Government for the repayment of any accelerated drawback payments determined to have been made in error.

9.      Plaintiff ALLIANCE INTERNATIONAL, CHB, INC. ("ALLIANCE") is a corporation organized and existing under the laws of the State of Utah.  It is a licensed customs broker which, as a significant part of its business, prepares and submits claims for duty drawback on behalf of participants in the United States duty drawback program, and regularly files claims for duty drawback on behalf of clients who hold a license to receive accelerated payment of drawback under Section 191.92 of the CBP Regulations, 19 C.F.R. § 191.92, which is the best evidence of its contents.

10.      Plaintiff C.J. HOLT & COMPANY, INC. ("C.J. HOLT") is a corporation organized and existing under the laws of the State of New Jersey.  It is a licensed customs broker which, as a significant part of its business, prepares and submits claims for duty drawback on behalf of participants in the United States duty drawback program, and regularly files claims for duty drawback on behalf of clients who hold a license to receive accelerated payment of drawback under Section 191.92 of the CBP Regulations, 19 C.F.R. § 191.92, which is the best evidence of its contents.

11.     Plaintiff CUSTOMS ADVISORY SERVICES, INC. ("CAS") is a corporation organized and existing under the laws of the State of Georgia.  It is a licensed customs broker which, as a significant part of its business, prepares and submits claims for duty drawback on behalf of participants in the United States duty drawback program, and regularly files claims for duty drawback on behalf of clients who hold a license to receive accelerated payment of drawback under Section 191.92 of the CBP Regulations, 19 C.F.R. § 191.92, which is the best evidence of its contents.

12.     Plaintiffs all have prudential and Constitutional standing to commence this action, since they are actually aggrieved and injured by the agency actions complained of herein, have special standing to complain of procedural violations of the agency violations of the Administrative Procedure Act (APA) complained of herein, and are within the zone of interests sought to be protected by relevant provisions of the APA.

13.     Defendant the United States of America is the federal defendant.

14.     Defendant U.S. Customs and Border Protection ("CBP") is a federal agency that is constituted as part of the U.S. Department of Homeland Security but which, for certain purposes, reports to the U.S. Department of the Treasury.

15.     Defendant Steven T. Mnuchin ("MNUCHIN") is the secretary of the U.S. Department of the Treasury.  He is sued in his official capacity.

16.     Defendant Kevin K. McAleenan ("MCALEENAN") is the Commissioner of U.S. Customs and Border Protection.  He is sued in his official capacity.

## STATEMENT OF FACTS

17.     Section 313 of the Tariff Act of 1930, 19 U.S.C. § 1313, which is the best evidence of its contents, provides for the payment of duty drawback.  Drawback is a refund of certain

customs duties, taxes, and fees, conditioned upon performance of certain acts relating to the exportation of goods, or the destruction or use of goods under CBP supervision.  Principal types of duty drawback include, but are not limited to, direct identification manufacturing drawback, *id.* § 1313(a), substitution manufacturing drawback, *id.* § 1313(b), rejected merchandise drawback, *id.* § 1313(c), direct identification substitution drawback, *id.* § 1313(j)(1), substitution unused merchandise drawback, *id.* § 1313(j)(2), and drawback on exportation of substituted petroleum derivatives, *id.* § 1313(p).

18.     Section 1313(*l*) of the Tariff Act of 1930, 19 U.S.C. § 1313(*l*), which is the best evidence of its contents, provides:

> (*l*) *Regulations*. Allowance of the privileges provided for in this section shall be subject to compliance with such rules and regulations as the Secretary of the Treasury shall prescribe, which may include, but need not be limited to, the authority for the electronic submission of drawback entries and the designation of the person to whom any refund or payment of drawback shall be made.

19.     In furtherance of the Congressional directive set forth in 19 U.S.C. § 1313(*l*), the Secretary of the Treasury has promulgated comprehensive regulations dealing with the administration and enforcement of the duty drawback statute.  Part 191 of the CBP Regulations, 19 C.F.R pt. 191, which is the best evidence of its contents, contains comprehensive regulations dealing with all drawback claims filed under 19 U.S.C. § 1313.  Part 181 of the CBP Regulations, 19 C.F.R. pt. 181, which is the best evidence of its contents, contains supplemental rules applicable to drawback claims involving signatories to the North American Free Trade Agreement (NAFTA).

20.     Section 191.0 of the CBP Regulations, 19 C.F.R § 191.0, which is the best evidence of its contents, provides (emphasis added):

> § 191.0. *Scope*. This part sets forth general provisions applicable to **all drawback claims** and specialized provisions applicable to specific types of drawback claims. Additional drawback provisions relating to the North American Free Trade Agreement (NAFTA) are contained in subpart E of part 181 of this chapter.

21.     Section 191.0a of the CBP Regulations, 19 U.S.C. § 191.0a, which is the best evidence of its contents, provides:

> § 191.0a. *Claims filed under NAFTA.* Claims for drawback filed under the provisions of part 181 of this chapter shall be filed separately from claims filed under the provisions of this part.

22.     Part 181, Subpart E of the CBP Regulations, 19 C.F.R. pt. 181, subpt. E, which is the best evidence of its contents, contains provisions concerning "goods subject to NAFTA drawback" as defined in 19 U.S.C. § 3333, to wit, "goods which are imported into the United States and then subsequently exported from the United States to Canada on or after January 1, 1996, or to Mexico on or after January 1, 2001."

23.     Section 181.41 of the CBP Regulations, 19 C.F.R. § 181.41, which is the best evidence of its contents, provides in pertinent part, "The requirements and procedures set forth in this subpart [Part 181, Subpart B] for NAFTA drawback are in addition to the general definitions, requirements and procedures for all drawback claims set forth in part 191 of this chapter, unless otherwise specifically provided in this subpart."

24.     The provisions of Parts 191 and 181 of the CBP Regulations remain in full force and effect, and have not been modified, revoked, or suspended by any subsequent regulation adopted pursuant to the "notice-and-comment" rulemaking procedures of the APA, 5 U.S.C. § 553, nor have they been modified, revoked, or suspended by any subsequent or intervening law.

25.     On February 24, 2016, Congress enacted into law the Trade Facilitation and Trade Enforcement Act of 2015, Pub. L. 114-125, 130 Stat. 122 (TFTEA). Section 906 of TFTEA, which is the best evidence of its contents, sets out numerous amendments to the drawback statute, 19 U.S.C. § 1313, but does terminate or suspend that statute or its operation. The most important amendments to the drawback law made by TFTEA are replacement of the "same kind and quality"

test for substitution manufacturing drawback, 19 U.S.C. § 1313(b); and the "commercial interchangeability" test for substitution unused merchandise drawback, *id.* § 1313(j)(2), with tests based on eight- or ten-digit tariff classifications under the Harmonized Tariff Schedule of the United States (HTSUS), *id.* § 1202. In addition, TFTEA extends from three-years to five-years the period in which duty drawback may be claimed, measured from the date of importation of the merchandise designated for drawback to the date of filing of the drawback claim.

26.     The changes to the drawback law made by TFTEA are self-executing, and entered into force on February 24, 2016. Section 906(q) of TFTEA, which is the best evidence of its contents, provides in relevant part:

> (q) EFFECTIVE DATE.
>
>> (1) IN GENERAL.—The amendments made by this section shall—
>>
>>> (A) take effect on the date of the enactment of this Act; and
>>>
>>> (B) except as provided in paragraph (3), apply to drawback claims filed on or after the date that is 2 years after such date of enactment.

27.     Paragraph (3) of Section 906(q) of TFTEA, referenced in the preceding paragraph, sets out a "transition rule" that applies to claims for duty drawback filed between February 24, 2018 and February 23, 2019. The paragraph, which is the best evidence of its contents, provides as follows:

>> (3) TRANSITION RULE.—During the one-year period beginning on the date that is 2 years after the date of the enactment of this Act, a person may elect to file a claim for drawback under—
>>
>>> (A) section 313 of the Tariff Act of 1930, as amended by this section; or
>>>
>>> (B) section 313 of the Tariff Act of 1930, as in effect on the day before the date of the enactment of this Act.

28.     Section 906(g) of TFTEA amended former 19 U.S.C. § 1313(*l*) to redesignate it as 19 U.S.C. § 1313(*l*)(1), and directed MNUCHIN to issue, no later than February 24, 2018,

regulations pertaining to the calculation of duty drawback in certain instances.  The subsection, which is the best evidence of its contents, provides, in pertinent part:

> (g) REGULATIONS.—Section 313(*l*) of the Tariff Act of 1930 (19 U.S.C. 1313(*l*)) is amended to read as follows:
>
> "(*l*) REGULATIONS.
>
> "(1) IN GENERAL.—Allowance of the privileges provided for in this section shall be subject to compliance with such rules and regulations as the Secretary of the Treasury shall prescribe.
>
> "(2) CALCULATION OF DRAWBACK.—
>
> "(A) IN GENERAL.—Not later than the date that is 2 years after the date of the enactment of the Trade Facilitation and Trade Enforcement Act of 2015, the Secretary [of the Treasury] shall prescribe regulations for determining the calculation of amounts refunded as drawback under this section.

29.     The changes to the drawback statute mandated by TFTEA became effective with respect to drawback claims filed on and after February 24, 2018, the date two years after the date of enactment of TFTEA.

30.     However, MNUCHIN did not, as of February 24, 2018, publish the calculation regulation as directed by Congress in Section 906(g) of the TFTEA.

31.     Instead, on or about February 5, 2018, CBP posted to its website a document entitled *Drawback: Interim Guidance for filing TFTEA Drawback Claims, Version 1.1, February 5, 2018* (hereinafter, the "Guidance Document"), which is appended as Compl. Ex. A and made a part of this Complaint.  The Guidance Document provides instructions for filing duty drawback claims in CBP's Automated Commercial Environment (ACE) system and sets out a number of new substantive rules applicable to drawback claims that are subject to, or filed pursuant to, legal changes effected by TFTEA.

32.     In the Guidance Document, which is the best evidence of its contents, CBP indicated that the regulations mandated by Congress in Section 906(g) of TFTEA would *not* be published by the February 24, 2018 due date.  Instead, CBP noted (Compl. Ex. A, at 2):

> On February 24, 2018, CBP will deploy an electronic data interface for filing drawback claims within the Automated Commercial Environment (ACE). The trade will be able to file drawback claims authorized under section 906 of the Trade Facilitation and Trade Enforcement Act of 2015 (TFTEA), even though the applicable regulations have not been implemented. CBP is currently working to release a Notice of Proposed Rulemaking (NPRM) via the Federal Register. The NPRM proposes the regulations to implement TFTEA-Drawback. After public review and comment, CBP will issue a Final Rule that sets forth the regulations to implement 19 U.S.C. § 1313, as the law was amended by TFTEA (hereinafter "TFTEA-Drawback").

33.     In its Guidance Document, which is the best evidence of its contents, CBP indicated that the guidance therein would largely supplant the existing drawback law and regulations for an unspecified "interim period."  Specifically, the Guidance Document states (Compl. Ex. A, at 2):

> This guidance document is effective during what CBP considers an "interim period," which commences at the start of the transition year on February 24, 2018 and will continue until the Final Rule is in effect (i.e., when the TFTEA-Drawback regulations are implemented).

34.     In addition, the Guidance Document indicates that, for the specified "interim period" commencing February 24, 2018 and continuing until some unspecified date when new drawback regulations are published in final form, CBP will suspend the processing of accelerated payment of drawback under 19 C.F.R. § 191.92, for any drawback claims that seek payment on the basis of the definitions and rules set out in TFTEA.  Specifically, the Guidance Document, which is the best evidence of its contents, states:

> The regulations to implement TFTEA-Drawback will not be effective on February 24, 2018, which is the date when the trade may begin filing claims in ACE. *Accelerated Payment (AP) will not be processed until the TFTEA-Drawback regulations are implemented. TFTEA-Drawback claims submitted in ACE with an indicator to request AP privileges will not be accepted.* The TFTEA-Drawback

claim will need to be re-transmitted without the AP indicator in order for the TFTEA-Drawback claim to be accepted in ACE.

Compl. Ex. A, at 8 (emphasis added).  Thus, CBP has indicated that it will not only cease to process claims for accelerated payment of drawback filed allowed pursuant to 19 C.F.R. § 191.92, but will cease to accept claims for accelerated payment pursuant to that regulation.

35.    CBP's Guidance Document, which is the best evidence of its contents, also purports to limit the import entries which may be designated as the basis for certain drawback claims by imposing a so-called "first-filed" rule, for which there is no statutory or regulatory authority.  The Guidance Document notes that, pursuant to the authority granted in Section 906(g) of TFTEA, MNUCHIN intends to promulgate proposed regulations which will contain a "per unit" rule for calculating substitution drawbacks (Compl. Ex. A, at 4):

> For TFTEA-Drawback substitution claims, CBP intends to propose in the NPRM, consistent with section 906(g) of TFTEA, that refunds will be calculated based on the per unit average value reported on the line from the entry summary that covered the designated imported merchandise.
>
> The drawback claimant may be required to calculate the refund based on the value of the designated imported merchandise, with the equal apportionment of the amount of duties, taxes, and fees eligible for drawback for all units covered by a single line item on an entry summary to each unit of merchandise, and request a refund of 99% of the amount of duties, taxes, and fees applicable.

36.    The Guidance Document, which is the best evidence of its contents, further indicates that MNUCHIN's proposed "per-unit-average" rule for calculating drawback is expected to be accompanied by a proposed "lesser-of" rule for calculating certain drawback claims (Compl. Ex. A, at 4-5):

> In accordance with section 906(g) of TFTEA, TFTEA-Drawback substitution claims, both for manufacturing and unused merchandise drawback, will generally be subject to "lesser of" rules regarding the amount of duties, taxes, and fees to be refunded where the amount to be refunded may not exceed the lesser of the amounts associated with the designated imported merchandise or the substituted merchandise (comparative values)"

37.     Anticipating perhaps the substance of the regulation to be issued by MNUCHIN at some future date, the Guidance Document imposes, with immediate effect,  a "first-filed" rule that places limitations on the import entries and duty payments which drawback claimants may designate for certain types of drawback claims filed on or after February 24, 2018.  Specifically, the Guidance Document states (Compl. Ex. A, at 5):

> *First-Filed Rule — Limitations on Designation of Goods from an Import Entry Line Item*
>
> A consequence of using Per Unit Averaging for substitution claims under TFTEA-Drawback is that a single entry summary line item cannot be used for both direct identification and substitution drawback claims.
>
> Consequently, CBP proposes to limit each line on an entry summary to designation as the basis for either direct identification or substitution claims, but never both) [*sic*], and the designation is determined by the type of drawback claim that is first filed for a portion of the merchandise reported on each line.

38.     The "first-filed" limitation on duty drawback claims, set out in the preceding paragraph, is not merely *proposed*, but is in fact *imposed* by the Guidance Document with immediate effect.  CBP, in its Guidance Document, has indicated, "[i]f attempting to claim a different type of drawback on a line on which a drawback claim has already been submitted, claimants will receive an error message and the claim will not be accepted."  Compl. Ex. A, at 18.  CBP's Guidance Document indicates that this rule will be applied regardless of who was the first drawback claimant to designate a line item for drawback.  *Id.* at 23.  The Guidance Document further indicates that the First Filed rule applies without exceptions.  *Id.* at 24.

39.     The Guidance Document, which is the best evidence of its contents, also proposes a so-called "mixed-use" limitation on certain drawback claims.  A "mixed-use" claim is considered to exist when a claimant files for substitution drawback under the rules made effective by TFTEA, and designates on such claim, as a basis for drawback, an entry which has been previously designated for drawback.  Compl. Ex. A, at 13–14.

40.     According to the Guidance Document, which is the best evidence of its contents, when a claimant files a "mixed-use" claim, it will receive notice from CBP and will be required to provide to CBP documentation showing, *inter alia*, "which lines on the import entry summary have been used on past non-TFTEA drawback claims," together with copies of invoices, prior drawback claims and other information.  Compl. Ex. A, at 14.

41.     On information and belief, if CBP determines that an import entry line item was designated for drawback on a prior drawback claim filed prior to the effective date of TFTEA, the claim will be rejected or denied, notwithstanding that the import entry line item contains drawback-eligible merchandise not previously designated for drawback.

42.     If a so-called "mixed-use" claim is submitted without the supplemental information requested by CBP, the Guidance Document indicates that "the claim will be denied."  Compl. Ex. A, at 14.

43.     CBP has indicated that it will only allow "mixed-use" claims to be filed during the "transition year" (*i.e.,* February 24, 2018 through February 23, 2019), notwithstanding that post-TFTEA implementation drawback claims may, after the "transition year," designate entry line items previously designated on drawback claims filed prior to the date TFTEA entered into force. Compl. Ex. A, at 14.

44.     On information and belief, after the "transition year," CBP will not accept claims for substitution drawback which designate entries previously designated for drawback, regardless of which line item is designated.

45.     The changes effected by the Guidance Document took effect on February 24, 2018, and are currently in effect and being enforced by CBP.  Accordingly, these actions are ripe for judicial review.

## COUNT I — BY ALL PLAINTIFFS
**Agency Action Without Observance of Procedure Required by Law**
**(5 U.S.C. § 706(2)(D))**

46.     Paragraphs 1 through 45 of this Complaint are restated and incorporated by reference as though fully set forth herein.

47.     Part 191 of the CBP Regulations, which is the best evidence of its contents, sets forth general provisions "applicable to all drawback claims.  19 C.F.R. § 191.0.

48.     Part 191 of the CBP Regulations, which is the best evidence of its contents, sets forth procedures applicable to applications and permissions to receive accelerated payment of drawback.  19 C.F.R. § 191.92.

49.     The provisions of Part 191 of the CBP Regulations, having been adopted pursuant to specific statutory directive, 19 U.S.C. § 1313(*l*), as well as the notice and comment rulemaking procedures set forth in the APA, 19 U.S.C. § 553, have the force and effect of law.

50.     The provisions of 19 C.F.R. § 191.92, pertaining to accelerated payment of drawback, have not been revoked or superseded by statute, nor by regulation adopted in accordance with the requirements of the APA, 5 U.S.C. § 553.

51.     Section 191.92(a)(1) of the CBP Regulations, which is the best evidence of its contents, provides:

> (1) *Scope.* Accelerated payment of drawback is available under this section on drawback claims under this part, unless specifically excepted from such accelerated payment. Accelerated payment of drawback consists of the payment of estimated drawback before liquidation of the drawback entry. Accelerated payment of drawback is only available when Customs review of the request for accelerated payment of drawback does not find omissions from, or inconsistencies with the requirements of the drawback law and part 191 (*see*, especially, subpart E of this part). Accelerated payment of a drawback claim does not constitute liquidation of the drawback entry.

52.     Pursuant to 19 C.F.R. § 191.92 of the CBP Regulations, drawback claimants seeking to obtain accelerated payment of drawback claims are required to submit to CBP, and have approved by the agency, an application which conforms to the requirements of the regulation, including a signed certification, affirming that all applicable statutory and regulatory requirements for drawback will be met, and must furnish CBP with a description of "annual review by the claimant to ensure that its drawback program complies with the statutory and regulatory drawback requirements and that Customs is notified of any modifications from the procedures described in this application." *Id.* at § 191.92(b)(4)(v).

53.     Pursuant to 19 C.F.R. § 191.92(d) and 19 C.F.R. § 113.65(b), which are the best evidence of their contents, claimants who are approved for accelerated payment of drawback must file with CBP a bond to ensure repayment of any differences between expedited drawback claims refunded on an accelerated basis, and such lesser drawback amounts as may be determined upon liquidation of a drawback claim.  In particular, 19 C.F.R. § 191.92(d), which is the best evidence of its contents, provides:

> (d) *Bond required.* If approved for accelerated payment, the claimant must furnish a properly executed bond in an amount sufficient to cover the estimated amount of drawback to be claimed during the term of the bond. If outstanding accelerated drawback claims exceed the amount of the bond, the drawback office will require additional bond coverage as necessary before additional accelerated payments are made.

54.     Section 113.65 of the CBP Regulations, which is the best evidence of its contents, concerns "Repayment of Erroneous Drawback Payment Bond Conditions," and provides that "[a] bond for repayment of erroneous drawback must contain the conditions listed in this section and may be either a single transaction or continuous bond." Section 113.65(b) of the CBP Regulations, 19 C.F.R. § 113.65(b), which is the best evidence of its contents, provides:

(b) *Agreement Under Accelerated Payment of Drawback.* If the principal receives an accelerated payment of drawback based on the principal's calculation of the drawback claim, the principal and surety, jointly and severally agree to refund on demand the full amount of any overpayment, as determined on liquidation of the drawback claim.

55.     Section 191.92(*i*) of the CBP Regulations, 19 C.F.R. § 191.92(*i*), which is the best evidence of its contents, mandates CBP processing of accelerated drawback payments in respect of claims made by drawback claimants certified to receive such payments:

(*i*) *Payment.* The drawback office approving a drawback claim in which accelerated payment of drawback was requested shall certify the drawback claim for payment within 3 weeks after filing, if a component for electronic filing of drawback claims, records, or entries which has been implemented under the National Customs Automation Program (NCAP) (19 U.S.C. 1411-1414) is used, and within 3 months after filing, if the claim is filed manually. After liquidation, the drawback office shall certify payment of any amount due or demand a refund of any excess amount paid. Any excess amount of duty the subject of accelerated payment that is not refunded within 30 days after the date of liquidation of the related drawback entry shall be considered delinquent (see §§ 24.3a and 113.65(b) of this chapter.)

56.     None of the provisions of the CBP Regulations pertaining to accelerated payment of drawback have been revoked by operation of law.

57.     None of the provisions of the CBP Regulations pertaining to accelerated payment of drawback have been amended, superseded or revoked by means of rulemaking conducted pursuant to the APA, 5 U.S.C. § 553.

58.     The scope and substance of a  regulation adopted pursuant to Notice and Comment Rulemaking pursuant to the APA, 5 U.S.C. § 553, cannot be amended, changed, or revoked except through formal APA rulemaking, and cannot be amended, changed or revoked through an agency "Guidance Document" or similar pronouncement.  *See Glycine & More Inc. v. United States*, 880 F.3d 1355 (Fed. Cir. 2018).

59.     To the extent CBP's Guidance Document purports to change the scope and substance of the CBP Regulations, or to suspend the operation thereof, including but not limited

to the CBP Regulations dealing with accelerated payment of drawback claims, the actions taken by the Guidance Document must be held unlawful and set aside as having been done "without observance of procedure required by law," as provided in 5 U.S.C. § 706(2)(D).

### COUNT II — BY PLAINTIFFS TABACOS, TOBACCO RAG, BROWN, NIPPON AMERICA, and SKATE ONE
**Suspension of License Without Observance of Procedure Required by Law**
**(5 U.S.C. §§ 558(c), 706(2)(D))**

60.     Paragraphs 1 through 59 of this Complaint are restated and incorporated by reference as though fully set forth herein.

61.     At all times relevant to this action, Plaintiffs TABACOS, TOBACCO RAG, BROWN, NIPPON AMERICA, and SKATE ONE had been granted permission to receive accelerated payment of drawback pursuant to 19 C.F.R. § 191.92, and had posted bonds to secure repayment of drawbacks found to have been paid in error as required by 19 C.F.R. §113.65.

62.     In connection with the operation of their duty drawback programs, Plaintiffs TABACOS, TOBACCO RAG, BROWN, NIPPON AMERICA, and SKATE ONE had filed claims for duty drawback pursuant to 19 U.S.C. § 1313, and had received accelerated payments of drawback, secured by the aforementioned bonds.   These Plaintiffs complied with all laws, regulations and procedures relating to the receipt of accelerated payments of drawback.

63.     The authorizations granted to Plaintiffs TABACOS, TOBACCO RAG, BROWN, NIPPON AMERICA, and SKATE ONE to receive accelerated payments of drawback constitute "licenses" for purposes of the APA, which defines a "license" as "the whole or part of an agency permit, certificate, approval, registration, charter, membership, statutory exemption or other form of permission."  5 U.S.C. § 551(8).

64.     Defendants' suspension of processing claims for accelerated payment of drawback pursuant to 19 C.F.R. § 191.92, and refusal to accept future claims for accelerated payment in drawback filings, as set out in the Guidance Document, Compl. Ex. A, constitutes final agency action and constitutes a *de facto* and *de jure* suspension or revocation of the accelerated payment licenses of Plaintiffs TABACOS, TOBACCO RAG, BROWN, NIPPON AMERICA, and SKATE ONE under 19 C.F.R. § 191.92.

65.     Defendants suspended the accelerated payment status of Plaintiffs TABACOS, TOBACCO RAG, BROWN, NIPPON AMERICA, and SKATE ONE without providing notice of any laws or regulations allegedly violated, without providing these Plaintiffs an opportunity to demonstrate or achieve compliance with all lawful requirements prior to initiating suspension or revocation proceedings, and without according these Plaintiffs the procedural rights set out in 19 C.F.R. §§ 191.92(f) and 191.92(h).

66.     The APA, 5 U.S.C. § 558(c), which is the best evidence of its contents, provides:

(c). When application for a license is required by law, the agency, with due regard for the rights and privileges of the interested parties or adversely affected persons, and within a reasonable time, shall set and complete proceedings required to be conducted in accordance with sections 556 and 557 of this Act and shall make its decision. Except in cases of willfulness or those in which the public health, interest or safety requires otherwise, the withdrawal, suspension, revocation or annulment of a license is lawful only if, before institution of agency proceedings therefor, the licensee has been given –

(1) Notice by the agency in writing of the facts or conduct which may warrant the action; and

(2) Opportunity to demonstrate or achieve compliance with all lawful requirements.

Where the licensee has made timely and sufficient application for a renewal or a new license in accordance with agency rules, a license with reference to an activity of a continuing nature does not expire until the application has been finally determined by the agency.

67.     Defendant, without commencing proceedings to revoke, withdraw, suspend or annul Plaintiffs TABACOS, TOBACCO RAG, BROWN, NIPPON AMERICA, and SKATE ONE's accelerated payment of drawback license did not provide these Plaintiffs with notice in writing of the facts which may warrant the action, as required by 5 U.S.C. § 558 and 19 C.F.R. § 191.92(f), or of providing these Plaintiffs with access to the challenge procedure set out at 19 C.F.R. § 191.92(h).

68.     On information and belief, there are no circumstances relating to the public health, interest or safety which would relieve Defendants of the obligation to provide Plaintiffs TABACOS, TOBACCO RAG, BROWN, NIPPON AMERICA, and SKATE ONE with prior notice and opportunity to correct any defects pursuant to 5 U.S.C. § 558(c).

69.     The APA requires a reviewing court to hold any lawful and set aside, agency action done "without observance of procedure required by law."  5 U.S.C. § 706(2)(D).

70.     To the extent Defendants have suspended, revoked, withdrawn or annulled the accelerated payment licenses held by Plaintiffs TABACOS, TOBACCO RAG, BROWN, NIPPON AMERICA, and SKATE ONE without observance of the procedures required by 5 U.S.C. § 558(c), this court must set aside such action as without observance of procedure required by law, in accordance with 5 U.S.C. § 706(d)(2).

### <u>COUNT III — BY ALL PLAINTIFFS</u>
**Enactment of Substantive Rules ("First-Filed" Rule) Without Observance of
Procedure Required by Law
(5 U.S.C. § 706(2)(D))**

71.     Paragraphs 1 through 70 of this Complaint are restated and incorporated by reference as though fully set forth herein.

72.     Section 313(j)(2) of the Tariff Act of 1930, as amended by Section 906(e)(2)(B) of

the TFTEA, and which is the best evidence of its contents, provides in relevant part (emphasis

added):

(1) Subject to paragraph (4), if there is, with respect to imported merchandise on which
was paid any duty, tax, or fee imposed under Federal law upon entry or importation,
**any other merchandise** (whether imported or domestic), that—

    (A) is classifiable under the same 8-digit HTS subheading number as such imported
merchandise;

    (B) is, before the close of the 5-year period beginning on the date of importation of
the imported merchandise, either exported or destroyed under customs
supervision; and

    (C) before such exportation or destruction—

        (*i*) is not used within the United States, and
        (*ii*) is in the possession of, including ownership while in bailment, in leased
facilities, in transit to, or in any other manner under the operational control
of, the party claiming drawback under this paragraph, if that party—

            (I) is the importer of the imported merchandise, or
            (II) received from the person who imported and paid any duty due
on the imported merchandise a certificate of delivery transferring to
the party the imported merchandise, merchandise classifiable under
the same 8-digit subheading number as such imported merchandise,
or any combination of imported and commercially interchangeable
merchandise (and any such transferred merchandise,  regardless of
its origin, will be treated as the imported merchandise and any
retained merchandise will be treated as domestic merchandise);

then, notwithstanding any other provision of law, upon the exportation or destruction
of such other merchandise an amount calculated by the Secretary of the Treasury under
subsection (*l*) shall be refunded as drawback under this subsection, but in no case may
the total drawback on the imported merchandise, whether available under this
paragraph or any other provision of law or any combination thereof, exceed 99 percent
of that duty, tax, or fee.

73.     Neither 19 U.S.C. § 1313(j)(2), nor any other law or regulation, imposes a limit or

restriction on the "other merchandise" which, upon meeting the requirements of the statute may

be designated as the basis for a substitution unused merchandise drawback claim under the statute.

74.     However, the Guidance Document, Compl. Ex. A, through the establishment of a so-called "First Filed" rule, purports to limit the "other merchandise" which may be designated as the basis of a 19 U.S.C. § 1313(j)(2) drawback claim, and to prohibit designation of any qualifying merchandise if other merchandise entered on the same entry line item had been designated as the basis for other types of drawback claims, including 19 U.S.C. § 1313(j)(1) direct identification unused merchandise drawback.

75.     The Guidance Document further indicates that the "First Filed" rule had an immediate effect beginning February 24, 2018, and further specifies a penalty or consequence for non-compliance, specifically the rejection of the claim for drawback.  Compl. Ex. A, at p. 5.

76.     The "First Filed" rule is a substantive rule which imposes a new restriction on the designation of imported duty paid goods for substitution unused merchandise drawback under 19 U.S.C. § 1313(j)(2).

77.     The "First Filed" rule is a rule of general applicability which applies to all persons intending to claim substitution unused merchandise drawback under the statutory amendments to 19 U.S.C. § 1313(j)(2) following the entry into force of the changes enacted by TFTEA.

78.     The "First Filed" Rule is in immediate effect and bears consequences for non-compliance, specifically the rejection of a drawback claim designating imported merchandise previously identified for direct identification unused merchandise drawback under 19 U.S.C. § 1313(j)(1).

79.     The substitution unused merchandise drawback statute, 19 U.S.C. § 1313(j)(2) contains statutory time limits on the designation of imported goods for drawback, requiring the claim to have been filed no later than five-years after the date the designated merchandise is imported.

80.   The APA, 5 U.S.C. § 553(b), provides in pertinent part:

(b) General notice of proposed rulemaking shall be published in the Federal Register, unless persons subject thereto are named and either personally served or otherwise have actual notice thereof in accordance with law. The notice shall include—
>   (1) a statement of the time, place, and nature of public rule making proceedings;
>   (2) reference to the legal authority under which the rule is proposed; and
>   (3) either the terms or substance of the proposed rule or a description of the subjects and issues involved.

81.   The APA, 5 U.S.C. § 553(c) and (d), further provides that:

(c) After notice required by this section, the agency shall give interested persons an opportunity to participate in the rule making through submission of written data, views, or arguments with or without opportunity for oral presentation. After consideration of the relevant matter presented, the agency shall incorporate in the rules adopted a concise general statement of their basis and purpose. When rules are required by statute to be made on the record after opportunity for an agency hearing, sections 556 and 557 of this title apply instead of this subsection.
(d) The required publication or service of a substantive rule shall be made not less than 30 days before its effective date, except—
>   (1) a substantive rule which grants or recognizes an exemption or relieves a restriction;
>   (2) interpretative rules and statements of policy; or
>   (3) as otherwise provided by the agency for good cause found and published with the rule.

82.   Notice of the "First Filed" rule was not published in the Federal Register, as required by 5 U.S.C. § 553(b).

83.   Interested parties were not given on opportunity to comment on the proposed "First Filed" rule, as required by 5 U.S.C. § 553(c).

84.   The APA, 5 U.S.C. § 553(b)(3)(B), allows an agency to dispense with the required notice and opportunity for comment, prior to publication of a regulation "(B) when the agency for good cause finds (and incorporates the finding and a brief statement of reasons therefor in the rules issued) that notice and public procedure thereon are impracticable, unnecessary, or contrary to the

public interest." Defendants did not make the finding required by this provision, and did not publish the "First Filed" rule in accordance therewith.

85.     CBP's "First Filed" rule was adopted without observance of procedure required by law, and is required to be set aside under 5 U.S.C. § 706(2)(D).

### COUNT IV — BY ALL PLAINTIFFS
**Enactment of Substantive Rules ("Mixed-Use" Rule) Without Observance of Procedure Required by Law**
**(5 U.S.C. § 706(2)(D))**

86.     Paragraphs 1 through 85 of this Complaint are restated and incorporated by reference as though fully set forth herein.

87.     The Guidance Document, which is the best evidence of its contents, sets outs substantive rules governing what are referred to as "Mixed Use" drawback claims. Compl. Ex. A, at 4, 13-14.

88.     According to the Guidance Document, "Mixed Use" drawback claims are those for which merchandise contained on an entry line item that has been designated for drawback on a claim filed pursuant to the drawback statute as it existed prior to the TFTEA changes, and then other goods from the same entry line item are designated as the basis for substitution drawback under the rules set out in the TFTEA.

89.     According to the Guidance Document, "[b]ecause line item reporting is not required for non-TFTEA drawback claims, CBP will have to perform manual verifications for TFTEA substitution drawback claims (refund calculations based on unit averaging) when they designate any line items from import entries previously designated on non-TFTEA drawback claims (refund calculations based on invoice values)." Compl. Ex. A, at 13.

90.     When submitting a so-called "Mixed use" TFTEA drawback claim, the Guidance Document advises that claimant will be notified and required to submit to CBP additional

documents, including but not limited to a summary document showing which lines on the import entry summary have been used on past "core non-TFTEA" drawback claims, import entry summary and associated invoices, all prior drawback claims that designated the relevant import entry, and all relevant post-summary corrections for the import/entry perfections of the prior drawback claims.  Compl. Ex. A, at 14.

91.     The Guidance Document states that CBP will perform verification of "mixed use" claims and additional documents "in order to substantiate that the line item designated on the TFTEA substitution drawback claim was not designated on a non-TFTEA drawback claim. Compl. Ex. A, at 14.

92.     The Guidance Document states that "CBP will accept and verify the correctness of mixed claims during the transition year (*i.e.,* February 24, 2018 through February 23, 2019) per this interim policy."  Compl. Ex. A, at 14.

93.     According to the "Guidance Document, "if a 'mixed use' claim is submitted without the required supporting documentation, then the claim will be denied."  Compl. Ex. A, at 14.

94.     According to the Guidance Document, CBP will "only allow 'mixed use' claims to be filed during the transition year."  *Id.*

95.     Where a so-called "mixed use" claim is submitted during the transition year, drawback will be denied if the entry line item designated on a TFTEA substitution drawback claim had been designated on a non-TFTEA drawback claim.  *Id.*

96.     On information and belief, where a so-called "mixed use" drawback claim is submitted after the transition year (*i.e.,* after February 23, 2019), drawback will be denied if any merchandise on an import entry had been designated as part of a non-TFTEA drawback claim.  In

other words, the claim will become fully subject to the "first filed" rule described in Count III of this Complaint.

97.     The "Mixed Use" rule, as published in the Guidance Document, is a substantive rule which imposes a new restriction on the designation of imported duty paid goods for substitution unused merchandise drawback under 19 U.S.C. § 1313(j)(2) or substitution manufacturing drawback under 19 U.S.C. § 1313(b).

98.     The "Mixed Use" rule is a rule of general applicability which applies to all persons intending to claim substitution unused merchandise drawback under the statutory amendments to 19 U.S.C. § 1313(j)(2) and 19 U.S.C. § 1313(b) following the entry into force of the changes enacted by TFTEA.

99.     The "Mixed Use" rule is in immediate effect and bears consequences for non-compliance, specifically the denial of a drawback claim designating imported merchandise from an entry previously identified for non-TFTEA drawback.

100.     The substitution unused merchandise drawback statute, 19 U.S.C. § 1313(j)(2) and the substitution manufacturing drawback statute, 19 U.S.C. § 1313(b), contain statutory time limits on the designation of imported goods for drawback, requiring the claim to have been filed no later than five-years after the date the designated merchandise is imported.

101.     The APA, 5 U.S.C. § 553(b), provides in pertinent part:

> (b) General notice of proposed rulemaking shall be published in the Federal Register, unless persons subject thereto are named and either personally served or otherwise have actual notice thereof in accordance with law. The notice shall include—
>
>> (1) a statement of the time, place, and nature of public rule making proceedings;
>> (2) reference to the legal authority under which the rule is proposed; and

(3) either the terms or substance of the proposed rule or a description of the subjects and issues involved.

102.    The APA, 5 U.S.C. § 553(c) and (d), further provides that:

(c) After notice required by this section, the agency shall give interested persons an opportunity to participate in the rule making through submission of written data, views, or arguments with or without opportunity for oral presentation. After consideration of the relevant matter presented, the agency shall incorporate in the rules adopted a concise general statement of their basis and purpose. When rules are required by statute to be made on the record after opportunity for an agency hearing, sections 556 and 557 of this title apply instead of this subsection.

(d) The required publication or service of a substantive rule shall be made not less than 30 days before its effective date, except—

(1) a substantive rule which grants or recognizes an exemption or relieves a restriction;
(2) interpretative rules and statements of policy; or
(3) as otherwise provided by the agency for good cause found and published with the rule.

103.    Notice of Defendants' "mixed use" rule limiting the imported duty paid merchandise which may be designated as the basis of a claim for substitution unused merchandise drawback, 19 U.S.C. § 1313(j)(2), or substitution manufacturing drawback, 19 U.S.C. § 1313(b), was not published in the Federal Register as required by 5 U.S.C. § 553(b).

104.    Defendants did not provide interested parties with an opportunity to comment on the proposed "mixed use" rule, as required by 5 U.S.C. § 553(c).

105.    The APA allows an agency to dispense with the required notice and opportunity for comment, prior to publication of a regulation "when the agency for good cause finds (and incorporates the finding and a brief statement of reasons therefor in the rules issued) that notice and public procedure thereon are impracticable, unnecessary, or contrary to the public interest." 5 U.S.C. § 553(b)(3)(B).  Defendants did not make the finding required by this provision, and did not publish the "mixed use" rule in accordance therewith.

106.    CBP's "mixed use" rule was adopted without observance of procedure required by law, and is required to be set aside under 5 U.S.C. § 706(2)(D).

**COUNT V — BY ALL PLAINTIFFS**
**Agency Action Unlawfully Withheld or Unreasonably Delayed**
**(5 U.S.C. § 706(1))**

107.    Paragraphs 1 through 106 of this Complaint are restated and incorporated by reference as though fully set forth herein.

108.    Section 313(*l*)(2)(A) of the Tariff Act of 1930, 19 U.S.C. § 1313(*l*)(2)(A), as amended by Section 906(g) of the TFTEA, which is the best evidence of its contents, directs the Secretary of the Treasury to issue a regulation prescribing a method for the calculation of certain drawbacks under Section 313 of the Tariff Act of 1930, as amended by the TFTEA. Section 313(*l*)(2)(A) provides (emphasis added):

(2).CALCULATION OF DRAWBACK.—

IN GENERAL.—Not later than the date that is **2 years after the date of the enactment of the Trade Facilitation and Trade Enforcement Act of 2015**, the Secretary shall prescribe regulations for determining the calculation of amounts refunded as drawback under this section.

109.    February 24, 2018 was the date that was "2 years after the date of the enactment of the Trade Facilitation and Trade Enforcement Act of 2015." *Id.*

110.    As of February 24, 2018, and to the date of the filing of this Complaint, the Secretary of the Treasury has not prescribed any regulations for determining the calculation of amounts refunded as drawback under 19 U.S.C. § 1313.

111.    Defendant CBP, in its Guidance Documentindicated that the required regulations would not be prescribed as of February 24, 2018. Compl. Ex. A, at 3.

112.    Defendant CBP has not indicated when the required regulations will be prescribed, but has indicated in the Guidance Document, Compl. Ex. A, at 3, that:

CBP is currently working to release a Notice of Proposed Rulemaking (NPRM) via the Federal Register. The NPRM proposes the regulations to implement TFTEA-Drawback. After public review and comment, CBP will issue a Final Rule that sets forth the regulations to implement 19 U.S.C. § 1313, as the law was amended by TFTEA (hereinafter "TFTEA-Drawback").

113.    On information and belief, based on the foregoing, the publication of the required regulation is not likely to happen for months or years.

114.    Congress, in Section 906(g) of the TFTEA, clearly specified that Defendant MNUCHIN was required to publish the required regulation "[n]ot later than the date that is 2 years after the date of the enactment of the Trade Facilitation and Trade Enforcement Act of 2015." Defendant MNUCHIN has not met that deadline.

115.    On information and belief, Defendant MNUCHIN has not specified any reason why he has failed to comply with the requirements of Section 906(g) of TFTEA with respect to the required rulemaking.

116.    Congressional mandatory delegations of rulemaking authority to the Secretary of the Treasury are self-executing. *First Chicago Corp. v. Comm'r*, 88 T.C. 633, 676 aff'd, 842 F.2d 180 (7th Cir. 1988). This is particularly true where the object of the rulemaking is to implement a legal provision favorable to the taxpayer. *Occidental Petroleum v. Comm'r*, 82 T.C. 819, 829 (1992).

117.    Section 906(g) of the TFTEA mandated the Secretary to issue a calculation regulation and Congress provided guidelines concerning the type of calculation regulations it would find acceptable. With respect to unused merchandise drawback, Section 313(*l*)(2)(B) of the Tarrif Act of 1930, as amended, 19 U.S.C. § 1313(*l*)(2)(B), provides:

(B) Claims with respect to unused merchandise.

The regulations required by subparagraph (A) for determining the calculation of amounts refunded as drawback under this section shall provide for a refund of equal

to 99 percent of the duties, taxes, and fees paid on the imported merchandise, which were imposed under Federal law upon entry or importation of the imported merchandise, and may require the claim to be based upon the average per unit duties, taxes, and fees as reported on the entry summary line item or, if not reported on the entry summary line item, as otherwise allocated by U.S. Customs and Border Protection, except that where there is substitution of the merchandise, then—

(*i*) in the case of an article that is exported, the amount of the refund shall be equal to 99 percent of the lesser of—

(I) the amount of duties, taxes, and fees paid with respect to the imported merchandise; or

(II) the amount of duties, taxes, and fees that would apply to the exported article if the exported article were imported; and

(*ii*) in the case of an article that is destroyed, the amount of the refund shall be an amount that is—

(I) equal to 99 percent of the lesser of—

(aa) the amount of duties, taxes, and fees paid with respect to the imported merchandise; and

(bb) the amount of duties, taxes, and fees that would apply to the destroyed article if the destroyed article were imported; and

(II) reduced by the value of materials recovered during destruction as provided in subsection (x).

118.   CBP, in Section 906(g) of the TFTEA, provided guidelines concerning the type of refund calculation regulations it would find acceptable. With respect to manufacturing drawback, Section 313(*l*)(2)(C) provides:

(C) Claims with respect to manufactured articles into which imported or substitute merchandise is incorporated.

The regulations required by subparagraph (A) for determining the calculation of amounts refunded as drawback under this section shall provide for a refund of equal to 99 percent of the duties, taxes, and fees paid on the imported merchandise incorporated into an article that is exported or destroyed, and may require the claim to be based upon the average per unit duties, taxes, and fees as reported on the entry summary line item or, if not reported on the entry summary line item, as otherwise allocated by U.S. Customs and Border Protection, except that where there is substitution of the merchandise, then—

(*i*) in the case of an article that is exported, the amount of the refund shall be equal to 99 percent of the lesser of—

(I) the amount of duties, taxes, and fees paid with respect to the  imported merchandise; or

(II) the amount of duties, taxes, and fees that would apply to the exported article if the exported article were imported; and

(*ii*) in the case of an article that is destroyed, the amount of the refund shall be an amount that is—

(I) equal to 99 percent of the lesser of—
(aa) the amount of duties, taxes, and fees paid with respect to the imported merchandise; and
(bb) the amount of duties, taxes, and fees that would apply to the destroyed article if the destroyed article were imported; and
(II) reduced by the value of materials recovered during destruction as provided in subsection (x).

119.    In light of the fact that Congress gave Defendant MNUCHIN a full two-years to issue the regulations prescribed by Section 906(g) of the TFTEA, and provided extensive guidance concerning the type of regulation which would be acceptable, Defendant MNUCHIN's delay in publishing the required regulation is unreasonable.

120.    The APA, 5 U.S.C. § 706(1), requires a reviewing court to compel agency action "unlawfully withheld or unreasonably delayed."

121.    Defendant MNUCHIN has unreasonably delayed in promulgating the regulations required by Section 906(g) of the TFTEA, and this Court should enter an order compelling the publication of required regulations within a reasonable time.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that this Court enter judgment in their favor; and that this Court:

A.      Temporarily and permanently enjoining Defendants from refusing to accept or process applications for accelerated payment of drawback, pursuant to 19 C.F.R. § 191.92;

B.      Temporarily and permanently enjoining Defendants from suspending, without due process, accelerated payment licenses held by Plaintiffs and other drawback claimants;

C.      Setting aside the "First Filed" rule contained in the Guidance Document pending final rulemaking, and enjoining Defendants from rejecting claims for drawback which identify imports for drawback in a manner contrary to that rule;

D.      Setting aside the "Mixed Use" rule contained in the Guidance Document pending final rulemaking, and enjoining Defendants from rejecting claims for drawback which identify imports for drawback in a manner contrary to that rule;

E.      Directing the Secretary of the Treasury to publish, within a reasonable time, the calculation regulations required to be published pursuant to Section 906(g) of the TFTEA; and

F.      Provide such other and further relief as this Court may deem just.


          *                       *                    *


Respectfully submitted,

    /s/ John M. Peterson
John M. Peterson
Richard F. O'Neill
Russell A. Semmel
NEVILLE PETERSON LLP
One Exchange Plaza
55 Broadway, Suite 2602
New York, NY 10006
(212) 635-2730
jpeterson@npwny.com

March 23, 2018

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I caused a copy of the foregoing SUMMONS and COMPLAINT to be

served by certified mail upon the following persons on this 23rd day of March, 2018:

<u>ALL DEFENDANTS</u>
Justin Miller, Esq.
U.S. Department of Justice,
Civil Division, Commercial Litigation Branch
International Trade Field Office
26 Federal Plaza, Room 346
New York, New York 10278

<u>DEFENDANT TREASURY SECRETARY MNUCHIN</u>
Brent McIntosh, Esq.
General Counsel
U.S. Department of the Treasury
1500 Pennsylvania Ave., N.W.
Washington, D.C. 20220

<u>DEFENDANTS CBP & CBP COMMISSIONER MCALEENAN</u>
Scott K. Falk, Esq.
Chief Counsel
U.S. Customs and Border Protection
1300 Pennsylvania Ave. NW
Washington, DC 20229

<u>/s/ Richard F. O'Neill</u>
Richard F. O'Neill
Neville Peterson LLP
