## IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

**BEFORE: HONORABLE JANE A. RESTANI, *SENIOR JUDGE***

_____

| | |
|---|---|
| TABACOS DE WILSON, INC; | : |
| TOBACCO RAG PROCESSORS, INC.; | : |
| BROWN-USC, INC.; | : |
| NIPPON AMERICA GROUP/OKURA USA INC.; | : |
| SKATE ONE CORPORATION; ALLIANCE | : |
| INTERANTIONAL, CHB, INC.; | : |
| C.J. HOLT & COMPANY, INC.; | : |
| CUSTOMS ADVISORY SERVICES, INC. | : |
| | : |
|                 Plaintiffs, | :       Court No. 18-00059 |
| | : |
|            v. | : |
| | : |
| UNITED STATES OF AMERICA, U.S. CUSTOMS | : |
| & BORDER PROTECTION, STEVEN T. | : |
| MNUCHIN, in his official capacity as Secretary of the | : |
| Treasury, *and* KEVIN K. McALEENAN, in his | : |
| official capacity as Commissioner, U.S. Customs & | : |
| Border Protection, | : |
| | : |
|                Defendants. | : |

_____ :

## DEFENDANTS' REPLY MEMORANDUM
## IN SUPPORT OF ITS MOTION TO DISMISS

CHAD A. READLER
Acting Assistant Attorney General

JEANNE E. DAVIDSON
Director

CLAUDIA BURKE
Assistant Director

JUSTIN R. MILLER
Senior Trial Counsel

JAMIE SHOOKMAN
Trial Attorney
Department of Justice, Civil Division

Commercial Litigation Branch
26 Federal Plaza, Room 346
New York, New York 10278
(212) 264-9241 or 9230
Attorneys for Defendants

OF COUNSEL:

ALEXANDRA KHREBTUKOVA
Attorney
Office of Chief Counsel
International Trade Litigation
U.S. Customs and Border Protection

DANIEL J. PAISLEY
Counsel for Tax, Trade & Tariff Policy
U.S. Department of the Treasury
Washington, D.C.

Dated:  May 3, 2018

# **TABLE OF CONTENTS**

INTRODUCTION ...................................................................................................... 1

   I. Counts 1 and 2 Should Be Dismissed Because The Interim Guidance Does Not Alter Any
     Rights, And Because The Regulations On Accelerated Payment Do Not Apply To
     Drawback Claims Filed Under The Amended Statute ........................................................ 3

     a. The Interim Guidance Does Not Alter Any Rights With Respect To Accelerated
       Payment Of Drawback Claims ........................................................................................ 4

     b. The Existing Regulations On Accelerated Payment Are Not Operative For Drawback
       Claims Filed Under The Amended Statute ...................................................................... 6

   II. Counts 3 and 4 Should Be Dismissed Because Plaintiffs Concede That The Claims Are
     Moot, And Because Their Arguments On Standing Lack Merit ....................................... 10

     a. Counts 3 And 4 Are Moot .......................................................................................... 11

     b. Even If Counts 3 And 4 Were Not Moot, Plaintiffs Lack Standing To Bring These
       Claims ........................................................................................................................... 11

   III. The Government Has Not Unreasonably Delayed In Promulgating The Regulations
      Required By TFTEA ...................................................................................................... 14

   IV. Plaintiffs' Request For The Production Of The NPRM Is Without Legal Basis ............. 17

CONCLUSION ........................................................................................................ 19

# **TABLE OF AUTHORITIES**

## **Cases**

Aerolineas Argentinas v. United States,
   77 F.3d 1564 (Fed. Cir. 1996) ...................................................................................... 6

Bennett v. Spear,
   520 U.S. 154 (1997) ...................................................................................................... 12

Brush v. Office of Personnel Management,
   982 F.2d 1554 (Fed. Cir. 1992) .................................................................................... 6

Camp v. Pitts,
   411 U.S. 138 (1973) ...................................................................................................... 17

Decker v. Nw. Envtl. Def. Ctr.,
    568 U.S. 597 (2013) ................................................................................. 6, 7

Glycine & More, Inc. v. United States,
    880 F.3d 1335 (Fed. Cir. 2018) ............................................................... 3, 7

Jifry v. FAA,
    370 F.3d 1174 (D.C. Cir. 2004) ................................................................. 13

Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak,
    567 U.S. 209 (2012) ..................................................................................... 12

Schlesinger v. Reservists Comm. to Stop the War,
    418 U.S. 208 (1974) ..................................................................................... 12

Strickland v. United States,
    423 F.3d 1335 (Fed. Cir. 2005) ..................................................................... 6

United States v. Larionoff,
    431 U.S. 864 (1977) ....................................................................................... 6

Vesser v. Office of Pers. Mgmt.,
    No. 95-3172, 1995 WL 758760 (Fed. Cir. Dec. 22, 1995) ......................... 6

**Statutes**

5 U.S.C. § 553(b)(B) ....................................................................................... 13

5 U.S.C. § 553(c) ............................................................................................ 10

5 U.S.C. § 706 ................................................................................................. 17

19 U.S.C. § 1313 ............................................................................................... 7

19 U.S.C. § 1313(l) ..................................................................................... 5, 14

19 U.S.C. § 1313(l)(2)(B)-(C) ........................................................................ 16

28 U.S.C. § 1581(i) ......................................................................................... 17

**Rules**

USCIT Rule 73.3(a) ................................................................................... 17, 18

**Regulations**

19 C.F.R. part 191 .................................................................................... 5, 6, 7

19 C.F.R. § 191.0 ................................................................................................ 4

19 C.F.R. § 191.51(b) ......................................................................................... 5, 10

19 C.F.R. § 191.51(b)(3) ..................................................................................... 9

19 C.F.R. § 191.92 ............................................................................................. 4, 9

19 C.F.R. § 191.92(e) ......................................................................................... 5, 10

19 C.F.R. § 191.92(a)(1) ..................................................................................... 5, 9, 10

## **Other Authorities**

Executive Order 12866, 58 Fed. Reg. 51735 (Sept. 30,1993), § 6(b)(2)(B) ............................... 17

H.R. Rep. 114-376 (2015) (Conf. Rep.) ................................................................... 15

Interim Guidance ...................................................................................... 2, *passim*

List of Regulatory Actions Currently Under Review, available at https://www.reginfo.gov/
public/jsp/EO/eoDashboard.jsp ............................................................................. 17

Trade Facilitation and Trade Enforcement Act of 2015 (TFTEA) .................................... 2, *passim*

TFTEA § 906 .......................................................................................... 2, 7, 8

TFTEA § 906(g) ...................................................................................... 5, 10, 14, 16

TFTEA § 906(q)(3)(A) and (B) .............................................................................. 4

**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

**BEFORE: HONORABLE JANE A. RESTANI, *SENIOR JUDGE***

| | |
|---|---|
| TABACOS DE WILSON, INC;<br>TOBACCO RAG PROCESSORS, INC.;<br>BROWN-USC, INC.;<br>NIPPON AMERICA GROUP/OKURA USA INC.;<br>SKATE ONE CORPORATION; ALLIANCE<br>INTERANTIONAL, CHB, INC.;<br>C.J. HOLT & COMPANY, INC.;<br>CUSTOMS ADVISORY SERVICES, INC.<br><br>                Plaintiffs,<br><br>            v.<br><br>UNITED STATES OF AMERICA, U.S. CUSTOMS<br>& BORDER PROTECTION, STEVEN T.<br>MNUCHIN, in his official capacity as Secretary of the<br>Treasury, *and* KEVIN K. McALEENAN, in his<br>official capacity as Commissioner, U.S. Customs &<br>Border Protection,<br><br>               Defendants. | Court No. 18-00059 |

**DEFENDANTS' REPLY MEMORANDUM
IN SUPPORT OF ITS MOTION TO DISMISS**

Defendants, the United States, U.S. Customs and Border Protection (CBP), Steven T.

Mnuchin, in his official capacity as Secretary of the Treasury (Treasury), and Kevin K.

McAleenan, in his official capacity as Commissioner, CBP, respectfully submit this reply

memorandum in support of our motion to dismiss this case.

**INTRODUCTION**

Plaintiffs Tabacos De Wilson, Inc., Tobacco Rag Processors, Inc., Brown-USA, Inc.,

Nippon America/Okura USA, Inc., Skate One Corporation, Alliance International, CHB, Inc.,

C.J. Holt & Company, Inc., and Customs Advisory Services, Inc. challenge the Government's

delay in promulgating regulations under Section 906 of the Trade Facilitation and Trade

Enforcement Act of 2015 (TFTEA), and certain provisional rules reflected in an *Interim*

*Guidance* document published by CBP.[1]  Plaintiffs are also attempting to compel CBP to provide

them with accelerated payment for their pending claims under the new law, notwithstanding that

the legal framework for calculating such claims is not complete, and CBP therefore is not

authorized to process such requests.

In our motion to dismiss (Def. Br.), we demonstrated that the complaint should be

dismissed because, first, plaintiffs' claims involving the provisional rules of the *Interim*

*Guidance* are not ripe for judicial review.  Def. Br. at 19-29.  The *Interim Guidance* contains

nothing more than policy statements or interpretative rules.  It does not constitute final agency

action and is therefore not reviewable.  Moreover, plaintiffs cannot demonstrate injury.  CBP is

holding all TFTEA drawback claims until the implementing regulations are in place, and CBP

will allow claimants to perfect their claims once the legal framework is finalized.  Therefore,

plaintiffs have no standing to bring these claims.  *Id.* at 29-31.

Second, plaintiffs' request to compel CBP to provide accelerated payment for pending

TFTEA drawback claims is without any legal basis.  The drawback statute (pre and post-

TFTEA) affords no right to accelerated payment.  Def. Br. at 31-34.  While CBP anticipates

affording eligible claimants with the privilege of accelerated payment under the forthcoming

implementing regulations, no such privilege currently exists with respect to claims filed under

the new law.  Therefore, plaintiffs have no basis to compel accelerated payment for pending

TFTEA drawback claims.

---

[1] All references herein to the *Interim Guidance* refer to Version 3 of the document.

Third, plaintiffs' claim that the Government has unreasonably delayed in issuing the regulations is unwarranted. While Congress anticipated that the agencies would issue the regulations by February 24, 2018, TFTEA imposed no penalty or consequence should the Government require more time. Def. Br. at 35-38. Moreover, the proposed regulations are in the final step of interagency review, and the Government is endeavoring to publish them for notice and comment as quickly as possible. In light of the complexity and significance of the issues, the volume of information under consideration, and the significant progress made by the agencies, the time the Government has required to issue the regulations is not unreasonable. *Id.* at 39-42.

In response, plaintiffs fail to establish subject matter jurisdiction, standing, or that their claims are legally sound. Most concerning, plaintiffs argue that the *Interim Guidance* impermissibly narrowed the scope of the regulations that allow eligible claimants to seek accelerated payment. Pl. Resp. Br. at 7, 11-12. In addition, plaintiffs claim that the agencies have gone beyond the requirements of TFTEA in drafting a package of implementing regulations, when all that is required in plaintiffs' view is a "single calculation regulation." *Id.* at 10. These, and the remainder of plaintiffs' arguments, fail for the reasons set forth below.

I.      **Counts 1 and 2 Should Be Dismissed Because The Interim Guidance Does Not Alter Any Rights, And Because The Regulations On Accelerated Payment Do Not Apply To Drawback Claims Filed Under The Amended Statute**

Plaintiffs argue that CBP is improperly limiting the scope of the accelerated payment regulations through the *Interim Guidance*. Plaintiffs' Response in Opposition to Defendants' Motion to Dismiss, and Reply in Support of Plaintiffs' Motion for a Preliminary Injunction (Pl. Resp. Br.) at 11-12 (citing *Glycine & More, Inc. v. United States*, 880 F.3d 1335 (Fed. Cir. 2018)). Plaintiffs allege throughout their brief that CBP must make accelerated payment to all

qualified claimants, whether their drawback claims are "pre- [or] post-TFTEA." *See*, *e.g.*, Pl. Resp. Br. at 7. Specifically, plaintiffs note that 19 C.F.R. § 191.0 covers "all drawback claims," and that 19 C.F.R. § 191.92 provides for accelerated payment on all such claims "**unless specifically excepted** from such accelerated payment." Pl. Resp. Br. at 12 (plaintiffs' emphasis). Plaintiffs then claim that, because the "Government has pointed to no provision which 'specifically excepts' drawback claims based on TFTEA substitution or timing rules from accelerated payment under [19 C.F.R. § 191.92]," the regulations guarantee accelerated payment for qualified claimants of "all drawback claims." *Id.* Plaintiffs' interpretation of the regulations is incorrect.

### a. The Interim Guidance Does Not Alter Any Rights With Respect To Accelerated Payment Of Drawback Claims

CBP is not improperly limiting the scope of the accelerated payment regulations, but rather, applying them in accordance with their plain meaning. As explained in our motion to dismiss, there are two legal frameworks that are relevant to plaintiffs' argument: (1) the drawback framework that existed prior to TFTEA and (2) the framework as amended by TFTEA. The *Interim Guidance* does not alter either one.

First, the *Interim Guidance* does not alter any rights that existed under the former drawback framework. TFTEA provides for a transition year, between February 24, 2018 and February 24, 2019, during which claimants may elect to file drawback claims either under the law as amended by TFTEA, or under the law "as in effect on the day before the date of the enactment of this Act." TFTEA § 906(q)(3)(A) and (B), respectively. The *Interim Guidance* makes clear that, during the transition year, claimants are free to file qualifying claims under the old law, and CBP will continue to provide accelerated payment for those claims to eligible claimants. *Interim Guidance* at 3.

Second, the *Interim Guidance* does not alter any rights that exist under the amended statute.  As we explained in our opening brief, *see* Def. Br. at 25, 32, plaintiffs have no basis to demand that CBP accept and process requests for accelerated payment for TFTEA drawback claims.  This is because portions of 19 C.F.R. part 191, *by their express terms*, are not operative with respect to claims filed under the amended statute.

Indeed, Section 191.92 of the regulations provides that "[a]ccelerated payment of drawback is *only* available when Customs review of the request for accelerated payment of drawback does not find omissions from, or inconsistencies with the requirements of the drawback law and part 191 (*see, especially, subpart E of this part*)."  19 C.F.R. § 191.92(a)(1) (emphasis added).  Subpart E of part 191 includes subsection 191.51 on "Completion of drawback claims."  Subsection 191.51, in turn, includes the requirements for filing a legally sufficient claim, including that drawback claimants correctly calculate the amount of the drawback.  19 C.F.R. § 191.51(b).  However, the amended statute does not provide the method for calculating drawback amounts.  Rather, it delegated that function to the agencies.  As such, the correct methodology for calculating drawback amounts under TFTEA is currently unknown, because it can only be determined upon the implementation of new regulations.  *See* TFTEA § 906(g) (amending 19 U.S.C. § 1313(l) to require new "regulations for determining the calculation of amounts refunded as drawback under this section").  Until such new regulations are promulgated and effective, Customs cannot verify whether claimants have used the correct methodology for calculating drawback claims filed under the new law, which is a condition precedent to receiving accelerated payment.  Accordingly, the plain meaning of the existing regulations demonstrates that accelerated payment is currently unavailable for drawback claims filed under the statute as amended by TFTEA.

**b.  The Existing Regulations On Accelerated Payment Are Not Operative For Drawback Claims Filed Under The Amended Statute**

In addition, plaintiffs' interpretation of the existing regulations on accelerated payment contravenes well-settled principles of administrative law.  It is a "basic tenet that 'regulations, in order to be valid, must be consistent with the statute under which they are promulgated.'" *Decker v. Nw. Envtl. Def. Ctr.*, 568 U.S. 597, 609 (2013) (quoting *United States v. Larionoff,* 431 U.S. 864, 873 (1977)).  It is therefore "axiomatic that a regulation cannot expand the scope of the statute under which it is promulgated."  *Vesser v. Office of Pers. Mgmt.*, No. 95-3172, 1995 WL 758760 at *2 (Fed. Cir. Dec. 22, 1995) (internal citation omitted); *see also Strickland v. United States*, 423 F.3d 1335, 1337 (Fed. Cir. 2005) (an "agency cannot expand by regulation its powers beyond those Congress granted to it").  It follows that regulations will be "held to be invalid" if they do "not comport with [a] clear statutory mandate."  *Brush v. Office of Personnel Management,* 982 F.2d 1554, 1560 (Fed. Cir. 1992); *see also Aerolineas Argentinas v. United States,* 77 F.3d 1564, 1575 (Fed. Cir. 1996) ("[w]hen a statute has been repealed, the regulations based on that statute automatically lose their vitality," because "[r]egulations do not maintain an independent life, defeating the statutory change.").

As we explained above, certain portions of 19 C.F.R. part 191 do not apply to drawback claims filed under the statute as amended by TFTEA, based on their express terms.  However, even if these provisions were not obviously inapplicable, the sheer fact that certain portions of 19 C.F.R. part 191 are inconsistent with the law as amended by TFTEA would render them inoperative.  In particular, whereas 19 C.F.R. part 191 implements all aspects of the drawback law in effect prior to TFTEA's enactment, TFTEA amended the law in a number of important substantive respects – including the drawback calculation methodology, as well as the standards for substitution, the types of charges that are available for drawback, the timeliness requirements,

6

and the requirements for proof of transfer, among others.  *Compare* TFTEA § 906 (amending 19

U.S.C. § 1313 in all of these respects), *with* 19 C.F.R. Pt. 191 (corresponding to 19 U.S.C.

§ 1313 as in effect *before* TFTEA).  As a result, the regulations implementing the old statutory

framework are not consistent with the law as amended by TFTEA and therefore cannot apply to

drawback claims filed under the amended statute.  Contrary to plaintiffs' assertion, the current

regulations in 19 C.F.R. part 191 do not apply to "all" drawback claims.  *See Decker*, 568 U.S. at

609 ("regulations, in order to be valid, must be consistent with the statute under which they are

promulgated.").

Plaintiffs' reliance on *Glycine*, in an attempt to show that CBP is misinterpreting the

existing regulations on accelerated payment, is inapposite.  Pl. Resp. Br. at 11, 15-16.  In that

case, the Court of Appeals for the Federal Circuit held that the Department of Commerce

improperly used a guidance document *to reinterpret an existing regulation*.  *Glycine*, 880 F.3d at

1345.  Here, CBP is not reinterpreting any existing regulations.  To the contrary, CBP is applying

19 C.F.R. part 191 in its entirety to drawback claims filed under the law in effect prior to

TFTEA's amendments, because that is all the statute allows.  And, for drawback claims filed

under the amended statute, CBP is refraining from applying any provisions of 19 C.F.R. part 191

that are inconsistent with TFTEA, because those provisions simply cannot apply.

For this reason, plaintiffs' allegation that they will suffer harm because "many claims

which may be eligible for drawback under TFTEA might not be eligible for drawback under pre-

TFTEA rules" misses the point.  Pl Resp. Br. at 32-33.  Plaintiffs cannot reasonably claim harm

because they cannot receive a payment to which they have no right.  Although plaintiffs are

correct that the amended statute covers a broader category of claims as compared to the pre-

TFTEA rules, plaintiffs gloss over the reality that the amended statute does not afford the right to

accelerated payment.  CBP has provided that benefit to the trading community through its

regulatory authority, and until the new regulations implementing Section 906 of TFTEA are

finalized and operational, claimants have no right to accelerated payment for TFTEA claims.

Similarly, plaintiffs argue that in the absence of accelerated payment, they have "lost

access to [a] cash resource," and/or they are "threatened with insolvency."  Pl. Resp. Br. at 32.

Once again, even if true, these assertions do not demonstrate a breach of the statute or regulation

by CBP.  Indeed, as explained above, the express terms of the existing regulations indicate that

accelerated payment is not available for drawback claims filed under the law as amended by

TFTEA.  Moreover, any so-called "harm" is merely the result of a business decision made by

plaintiffs regarding whether to capitalize their firms with accelerated payment of estimated

drawback versus other forms of revenue.  Plaintiffs have no statutory right to base the

capitalization of their firms on the accelerated payment of drawback.

In addition, plaintiffs claim that "impossibility" in calculating drawback claims should

not prevent accelerated payment, because "accelerated payments are refunds of *estimated*

drawbacks."  Pl. Resp. Br. at 36 (emphasis in original).  This argument contains several critical

flaws.

While CBP routinely estimates drawback claims based on *facts* that may be unknown

until the time of liquidation, CBP never estimates the *law* that will apply.  As plaintiffs note in

their brief, under the pre-TFTEA framework, CBP first estimates the total amount of drawback

prior to liquidation based on facts asserted by the drawback claimant.  *See* Pl. Resp. Br. at 39

(citing Gov. Br. at 7-8).  Then, prior to liquidation, CBP confirms the accuracy of the asserted

facts using corresponding invoices or other evidentiary sources, as appropriate.  *Id.*  Thus, under

the old regulatory framework, accelerated payment is estimated only in the sense that facts

8

asserted at the time of filing are not fully reviewed and confirmed until the time of liquidation.

However, CBP never guesses *how* it will calculate claims upon liquidation, nor is CBP ever

uncertain as to the law that will apply.  Therefore, once CBP ensures that a drawback claim is

facially consistent with all legal requirements, as required under 19 C.F.R. § 191.92(a)(1),

accelerated payment is made to eligible claimants.

Conversely, under the law as amended by TFTEA, CBP does not know the facts — or,

more importantly, the law — that will ultimately determine the final drawback amount.  Unlike

with drawback claims made under the pre-TFTEA framework, CBP cannot determine whether

drawback claims are facially consistent with all legal requirements, as required for accelerated

payment under 19 C.F.R. § 191.92, until the final regulations for calculating such claims have

been promulgated.  As a result, accelerated payment is currently unavailable for drawback claims

filed under TFTEA, which is a legal deficiency that cannot be cured, as plaintiffs claim, through

bonding.  Pl. Resp. Br. at 37, 39-41 (alleging that "risk to the revenue [is] eliminated" because

"accelerated drawback payments are secured, dollar-for-dollar, by bonds.").

Moreover, plaintiffs' assertion that they "have already certified compliance with statutory

and regulatory requirements for drawback" is simply untrue.  Pl. Resp. Br. at 38.  Any electronic

certification made with respect to drawback claims filed under the amended statute is currently

only a placeholder.  Only once these claims are "perfected," consistent with the final regulations,

will such certifications become final and valid.

In addition, the existing regulations on accelerated payment require compliance with "all

*applicable* statutory and regulatory requirements."  19 C.F.R. § 191.92(b)(3) (emphasis

added).  As explained above, because the existing regulations on accelerated payment permit

such payment only for claims using the pre-TFTEA calculation methodology, they are

inconsistent with the law as amended by TFTEA.  *Compare* 19 C.F.R. § 191.92(a)(1) (requiring consistency with subpart E, including 19 C.F.R. § 191.51); 19 C.F.R. § 191.51(b) (requiring claimants to use the calculation methodology in effect on the day before the enactment of TFTEA), *with* TFTEA § 906(g) (requiring the promulgation of new regulations providing a new calculation methodology for claims filed under the amended law).  Accordingly, the existing regulations on accelerated payment are not applicable to drawback claims made under the amended statute.  In the absence of the correct *applicable* regulations, plaintiffs simply cannot effectuate the certifications required for receiving accelerated payment on claims filed under TFTEA.

## II.    Counts 3 and 4 Should Be Dismissed Because Plaintiffs Concede That The Claims Are Moot, And Because Their Arguments On Standing Lack Merit

Counts 3 and 4 target the provisional first-filed and mixed use placeholder rules that are explained in the *Interim Guidance*.  Specifically, plaintiffs allege that the *Interim Guidance* sets forth "new restriction[s]" on drawback claims, which were "adopted without observance of procedure required by law," namely, the notice and comment requirement of the Administrative Procedure Act (APA), 5 U.S.C. § 553(c).  Compl. ¶¶ 85, 106.

We moved to dismiss these claims because the first-filed and mixed use "rules" are provisional placeholders and do not constitute final agency action.  Def. Br. at 34.  Such placeholders merely permit drawback claims to be filed electronically under the law as amended by TFTEA,[2] so as to preserve their timeliness while the legal framework is finalized.  However,

---

[2] In order to accept electronically filed claims within CBP's Automated Commercial Environment (ACE), the system requires a legal framework against which to validate the submitted data elements.  As noted in our moving papers and supporting declarations, the Customs and Trade Automated Interface Requirements (CATAIR) generally provide the programming instructions for communicating all necessary information to the automated system. Def. Br. at 12; Def. Ex. 1 (Declaration of Ms. Cynthia F. Whittenburg, CBP's Deputy Executive

CBP is "hold[ing]" such claims for processing until the regulations are finalized. *Interim Guidance* at 3, 7, 10. To the extent the final regulations differ from the current placeholders, CBP will allow claimants to perfect their claims by submitting any additional information that may be required under the final regulations. *Interim Guidance* at 2, 7, 9-13, 15-16, 25-27. Moreover, because CBP is holding all TFTEA drawback claims until the implementing regulations are in place, plaintiffs cannot demonstrate injury with respect to the first-filed or mixed use placeholder rules, which are not being applied to bar or deny any claims. Def. Br. at 29-31. Therefore, we also moved to dismiss Counts 3 and 4 for lack of standing.

### a. Counts 3 And 4 Are Moot

In response, plaintiffs agree that Counts 3 and 4 are moot "[i]f CBP will agree to entry of a final injunction or enforceable stipulation specifying that these rules will not be applied or enforced except after APA Rulemaking." Pl. Resp. Br. at 19. Such an injunction is not warranted. CBP has affirmed through a signed declaration that it will not decide any drawback claims filed under the amended law until the implementing regulations are in place. Def. Ex. 1 (Declaration of Ms. Cynthia F. Whittenburg, CBP's Deputy Executive Assistant Commissioner, Office of Trade) (Whittenburg Declaration) at ¶ 19. To the extent the provisional first-filed and mixed use rules are ultimately adopted in the final regulations, CBP has declared they will not be applied until the regulations are in place. Accordingly, these claims should be dismissed.

### b. Even If Counts 3 And 4 Were Not Moot, Plaintiffs Lack Standing To Bring These Claims

Plaintiffs misunderstand the standing inquiry, invoking the prudential standing doctrine, pursuant to which a claimant challenging agency action must show that "the interest sought to be

---

Assistant Commissioner, Office of Trade) at ¶ 12. A provisional TFTEA drawback CATAIR has been issued to permit and explain the use of the placeholder framework until the finalized legal framework is fully established. *Id.*

protected by the complainant is arguably within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question." *Bennett v. Spear*, 520 U.S. 154, 163 (1997) (internal quotation omitted).  Plaintiffs allege that as drawback claimants and licensed brokers, it is "self-evident" that they are within TFTEA's "zone of interests."  Pl. Resp. Br. at 21.

However, passing the "zone of interests" test does not obviate the need to satisfy all Article III Constitutional standing requirements.  *See*, e.g*., Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, 567 U.S. 209, 224 (2012) ("a person suing under the APA must satisfy not only Article III's standing requirements," but also the "zone of interests" test).  Of particular relevance here, the "zone of interests" test is irrelevant where a plaintiff fails to establish a judicially cognizable injury.  *See*, *e.g.*, *Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208, 227 (1974) ("Until a judicially cognizable injury is shown no other inquiry is relevant to consideration of citizen standing.").  As explained in our opening brief, plaintiffs cannot establish standing to bring Counts 3 and 4, because no such "rules" are in fact being applied to bar or deny any claims.  Def. Br. at 29-31.  As a result, plaintiffs cannot demonstrate any injury resulting from the application of the first-filed or mixed use placeholder rules, and it is irrelevant whether they are within TFTEA's "zone of interests."

Plaintiffs argue that the violation of their procedural rights alone constitutes injury sufficient to establish standing.  Pl. Resp. Br. at 22.  Specifically, plaintiffs claim that the first-filed and mixed use placeholder rules were "announced without any warning to plaintiffs or others in the trading community, and there was no opportunity for public participation."  *Id*.  Not only is this assertion untrue, *see*, *e.g.*, Whittenburg Declaration at ¶ 8 (describing the "significant outreach to various trade stakeholders" in the course of drafting the new regulatory package), it would not establish standing even if it were true.  As discussed in our opening brief, the *Interim*

*Guidance* explaining the provisional first-filed and mixed claims placeholder rules is an interpretive rule or policy statement that does not trigger the APA's notice and comment requirements.  Def. Br. at 21-23.  Once the notice of proposed rulemaking clears interagency review and is published in the Federal Register, the plaintiffs and others in the trading community will have ample opportunity to provide comments, which the agency will review and consider in finalizing the regulations.

Finally, plaintiffs argue that the placeholder first-filed and mixed use rules are inappropriate because, when provisional rules are necessary, the APA provides procedures for implementing "'interim final' rules."  Pl. Resp. Br. at 26-27.  Under the APA, regulations may be issued without notice and comment "when the agency for good cause finds (and incorporates the finding and a brief statement of reasons therefor in the rules issued) that notice and public procedure thereon are impracticable, unnecessary, or contrary to the public interest."  5 U.S.C. § 553(b)(B).  Such expedited procedures are not necessary or appropriate for these circumstances.  For example, the Government utilized this process in the wake of the deadly terrorist attacks of September 11, 2001, to swiftly implement measures addressing security vulnerabilities prior to the completion of the notice and comment procedures.  *See Jifry v. FAA*, 370 F.3d 1174, 1178-81 (D.C. Cir. 2004) (upholding the agency's finding of "good cause" to forgo notice and comment procedures with respect to such rulemaking).  The situation presented here does not rise to this level of urgency, and it therefore does not warrant departure from the notice and comment procedures of the APA.  Ironically, using this expedited process would have done exactly what plaintiffs are wrongly complaining about here — promulgating binding and effective regulations without notice and comment.

**III.      The Government Has Not Unreasonably Delayed In Promulgating The
            Regulations Required By TFTEA**

Plaintiffs allege in Count 5 that the Government has unreasonably delayed in

promulgating the regulations under TFTEA.  Compl. ¶¶ 119-121.  In our motion to dismiss, we

demonstrated that the timing of the regulation's issuance was not unreasonable given the

complexity and significance of the issues, the volume of information under consideration, and

the significant progress made by the agencies.  Def. Br. at 38-42.

Plaintiffs attempt to minimize the complexity of the forthcoming regulations by

characterizing them as "definitional" and involving a "single calculation."  Pl. Resp. Br. at 8-9.

Plaintiffs also claim that "Congress gave CBP a highly detailed blueprint for the calculation rule"

as a means to "aid the agency's deliberations."  *Id.* at 8.  In so arguing, plaintiffs seem to allege

that CBP could simply define the new method for calculating drawback claims under TFTEA,

and that this definition could be completely divorced (and therefore implemented independently)

from the so-called "conforming" regulations that will constitute part 190 of the C.F.R. once

finalized.  Plaintiffs go so far as claiming that the so-called "conforming" regulations account for

"the bulk of the mighty 450-page" draft NPRM.  Pl. Resp. Br. at 9-10.

First, as explained in our opening brief, *see* Def. Br. at 40-41, the statutory mandate to

"prescribe regulations for determining the calculation of amounts refunded as drawback," *see* 19

U.S.C. § 1313(l), as amended by Section 906(g) of TFTEA, is not reducible to "a single

calculation regulation" as plaintiffs claim.[3]  Pl. Resp. Br. at 10.  Rather, the draft NPRM that is

---

[3] For a detailed explanation of all the issues implicated in drafting new regulations on calculating
drawback claims, see pages 8 to 17 of our motion to dismiss.  There, we explained that TFTEA
contains a so-called "lesser of" rule to safeguard against revenue loss.  The "lesser of" rule
achieves this aim by requiring that, when calculating a substitution drawback claim for which
low-value goods are substituted for high-value goods, the amount of drawback available is
limited to the amount of duties, taxes, and fees that would apply to the lower value goods.
However, because TFTEA only contains a "lesser of" rule for substitution drawback claims, but

under review by OMB is a comprehensive regulatory package with many interrelated pieces that is most efficiently promulgated as a whole.  For example, the NPRM contains proposals on when and how to use per-unit averaging to calculate drawback claims, as well as proposals related to the first-filed and mixed use requirements, all of which affect the final calculation of drawback claims filed under TFTEA.[4]  In addition, in order to comply with various APA requirements, the draft NPRM contains significant perambulatory language, proposed regulatory text, and where appropriate, the reasoning and economic analysis underlying each of the proposals.  Plaintiffs' suggestion that the Government could sidestep all of this by promulgating a "single calculation regulation" is simply untrue.

In fact, the legislative history shows that Congress expected CBP and Treasury to "study the potential impact of [using] line item averaging" for calculating drawback amounts, and that the final regulations would only provide for the use of such averaging if it would simplify drawback claims without resulting in significant revenue loss.  *See* H.R. Rep. 114-376, at 220-21 (2015) (Conf. Rep.).  The fact that TFTEA contemplates a comprehensive evaluation by two

not for direct identification claims, CBP preliminarily determined that the different types of drawback claims should be calculated differently.  This preliminary determination, in turn, necessitated the proposal of further rules, including the proposed first-filed and mixed use requirements.  Far from setting forth a simple "definition," the regulations in question are part of a comprehensive regulatory package needed to implement TFTEA's various amendments, and to provide adequate guidance on filing drawback claims under the new law.

[4] There are also other aspects of TFTEA's amendments to the drawback law that require additional analysis and detail by way of regulation.  For example, the "lesser of" rule provided by TFTEA requires a calculation of the duties, taxes and fees that *would* apply to substituted merchandise *if* such merchandise were imported (when in fact, that precise merchandise was not actually imported, such that no duties, taxes, or fees were actually assessed).  In addition to determining the appropriate classification of this hypothetically-imported merchandise, the "lesser of" rule also requires determining its value.  These, and other issues, are not specified in the statute and must be addressed by regulation.

agencies before adopting a methodology for calculating drawback claims belies any allegation that the new regulations are merely "definitional."

Moreover, there is no "proposed calculation formula" in Section 906(g) of TFTEA.  Pl. Resp. Br. at 36.  In making this argument, plaintiffs cite to the so-called "lesser of" rule, which they describe as a "conservative" formula that "limit[s] the size of [a drawback] claim" made under TFTEA.  *Id.*  However, the "lesser of" rule is silent with respect to calculation methodology.  Indeed, the "lesser of" rule simply ensures that for substitution drawback claims, the value of high-value goods substituted for low value goods does not increase the overall amount of drawback available.  *See* 19 U.S.C. § 1313(l)(2)(B)-(C), as amended by TFTEA § 906(g).  The "lesser of" rule does not say *how* to calculate drawback claims made under TFTEA, nor did it override the need for CBP and Treasury to engage in extensive review of the different calculation methodologies available.

Plaintiffs have also clarified the nature of the relief that they seek for Count 5, which only further highlights that plaintiffs do not actually need what they have sought.  In the Complaint, plaintiffs request that the Court order Treasury "to publish, within a reasonable time, the calculation regulations" under TFTEA.  Compl. Prayer For Relief ¶ E.  We demonstrated in our motion to dismiss that plaintiffs' request is effectively seeking a writ a mandamus.  Def. Br. at 35.  When faced with the heighted legal standard applicable to this type of a request, plaintiffs clarified that they "do not seek imposition of any coercive statutory sanction."  Pl. Resp. Br. at 28.  Instead, plaintiffs now agree "that the two-year statutory deadline is to be treated as directory," *see id.*, and that they are only seeking "a purely legal remedy—namely review of the delay on the basis of the agency's record to determine whether Treasury's delay is 'unreasonable.'"  *Id.* at 29.  Such a review is not necessary given that the draft NPRM is in the

final stages of the interagency review process and will be published for notice and comment as soon as the review is complete.

The draft NPRM has been transmitted to OMB, and on April 6, 2018, OMB accepted the proposed NPRM for review. *See* List of Regulatory Actions Currently Under Review, available at https://www.reginfo.gov/public/jsp/EO/eoDashboard.jsp. As a general matter, OMB is permitted 90 days to complete its review. *See* Executive Order 12866, 58 Fed. Reg. 51735 (Sept. 30, 1993), § 6(b)(2)(B). We anticipate that the NPRM will be published for notice and comment as soon as OMB completes its review.[5]

### IV.    Plaintiffs' Request For The Production Of The NPRM Is Without Legal Basis

Finally, plaintiffs request that the Government produce a copy of the draft of the Notice of Proposed Rule Making for the Court's consideration in ruling on the motion for a preliminary injunction. Pl. Resp. Br. at 42-44. Plaintiffs' request has no legal basis.

First, plaintiffs' argument presupposes that the draft NPRM is part of the administrative record. This step is necessary in order for the Court to consider this document, because for cases commenced under 28 U.S.C. § 1581(i), the Court's review is limited to the administrative record developed before the agency. *See Camp v. Pitts*, 411 U.S. 138, 142 (1973); 5 U.S.C. § 706 (in making a determination under section 706, "the court shall review the whole record or those parts of it cited by a party . . . ."); *see also* USCIT Rule 73.3(a). It is unclear whether the administrative record in this proceeding would include the draft regulations that have not yet

---

[5] Plaintiffs observe that "the interval between the publication of a [NPRM] on a major regulatory CBP initiative, and the issuance of final regulations, typically takes years." Pl. Resp. Br. at 33. Plaintiffs provide 16 examples of this time interval for prior regulatory amendments. *Id.* at 33-35. Such information, however, is of no moment, as the target of plaintiffs' complaint is the delay in publishing the NPRM for notice and comment. And, as discussed herein, the interagency review process is in the final stages, and the draft NPRM will be published for notice and comment as soon as the review is complete.

been finalized.  This is not a challenge to the content of those regulations, nor could it be until they are final.

However, it is inappropriate to file the administrative record prior to answering the complaint.  *See* USCIT Rule 73.3(a) (instructing that the administrative record is filed concurrently with the answer to the complaint).  We have not yet filed the record because we have not yet answered the complaint due to our pending motion to dismiss.  The record is not necessary to determine the jurisdictional and threshold claims presented by our dispositive motion and by the plaintiffs' motion for preliminary injunction.

## <u>CONCLUSION</u>

For these reasons, defendants respectfully request that the Court dismiss the complaint

for lack of jurisdiction, or in the alternative, for failure to state a claim.

<table>
<tr><td></td><td>Respectfully submitted,</td></tr>
<tr><td></td><td>CHAD A. READLER<br>Acting Assistant Attorney General</td></tr>
<tr><td></td><td>JEANNE E. DAVIDSON<br>Director</td></tr>
<tr><td>By:</td><td>/s/ Claudia Burke<br>CLAUDIA BURKE<br>Assistant Director</td></tr>
</table>

OF COUNSEL:

ALEXANDRA KHREBTUKOVA
Attorney
Office of Chief Counsel
International Trade Litigation
U.S. Customs and Border Protection

DANIEL J. PAISLEY
Counsel for Tax, Trade & Tariff Policy
U.S. Department of the Treasury
Washington, D.C.

Dated:  May 3, 2018

/s/ Justin R. Miller
JUSTIN R. MILLER
Senior Trial Counsel

/s/ Jamie Shookman
JAMIE SHOOKMAN
Trial Attorney
Department of Justice, Civil Division
Commercial Litigation Branch
26 Federal Plaza, Room 346
New York, New York 10278
(212) 264-9241 or 9230

Attorneys for Defendant

## <u>CERTIFICATE OF COMPLIANCE</u>

I, Jamie L. Shookman, an attorney in the Office of the Assistant Attorney General, Civil Division, Commercial Litigation Branch, International Trade Field Office, who is responsible for the Government's May 3, 2018 reply memorandum in support of the motion to dismiss, relying upon the word count feature of the word processing program used to prepare the memorandum, certify that this memorandum complies with the word count limitation under the Court's chambers procedures, and contains 5417 words.

<u>/s/ Jamie L. Shookman</u>

20