Slip Op. 18-81

## UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| **TABACOS DE WILSON, INC; TABACCO RAG PROCESSORS, INC.; BROWN-USA, INC.; NIPPON AMERICA GROUP/ OKURA USA INC.; SKATE ONE CORPORATION; ALLIANCE INTERNATIONAL, CHB, INC.; C.J. HOLT & COMPANY, INC.; CUSTOMS ADVISORY SERVICES, INC.,** | |
| Plaintiffs, | **Before: Jane A. Restani, Judge** |
| v. | **Court No. 18-00059** |
| **UNITED STATES OF AMERICA, U.S. CUSTOMS & BORDER PROTECTION, STEVEN T. MNUCHIN, in his official capacity as Secretary of the Treasury, and KEVIN K. McALEENAN, in his official capacity as Commissioner, U.S. Customs & Border Protection,** | |
| Defendants. | |

## OPINION

[Finding jurisdiction and a viable claim in case of failure to issue statutorily required regulations; denying the preliminary relief sought by Plaintiffs.]

Dated: June 29, 2018

John Peterson, Neville Peterson, LLP, of New York, NY, argued for Plaintiffs Tabacos de Wilson, Inc., Tobacco Rag Processors, Inc., Brown-USA, Inc., Nippon America Group/Okura USA Inc., Skate One Corporation, Alliance International, CHB, Inc., C.J. Holt & Company, Inc., and Customs Advisory Services, Inc.  With him on the brief were Richard O'Neill and Russell Semmel, Neville Peterson, LLP, of New York, NY.

Justin Miller, International Trade Field Office, U.S. Department of Justice, of New York, NY, argued for Defendants United States; United States Customs and Border Protection; Steven T. Mnuchin, Secretary of Treasury; and Kevin K. McAleenan, Acting Commissioner of U.S. Customs & Border Protection.  Also on the brief were Alexandra Khrebtukova, Office of Chief

Counsel, International Trade Litigation, U.S. Customs and Border Protection, of New York, NY, and Jamie Shookman, International Trade Field Office, U.S. Department of Justice, of New York, NY.

      **Restani, Judge**:   In this action challenging a guidance document issued by the United States Customs and Border Protection ("CBP") to regulate drawback claims in the interim period while new regulations implementing the Trade Facilitation and Trade Enforcement Act of 2015 ("TFTEA") are being reviewed, importers:  Tabacos de Wilson, Inc., Tobacco Rag Processors, Inc., Brown-USA Inc., Nippon America, Inc., and Skate One Corporation; and brokers:  Alliance Customhouse Brokers, Inc., C.J. Holt & Company, Inc., and Customs Advisory Services, Inc. (collectively, "Plaintiffs") request the court hold that the interim guidance document unlawfully amended the existing drawback statute, 19 U.S.C §1313, and its regulations.   In response, the United States; CBP; Steven T. Mnuchin, Secretary of Treasury; and Kevin K. McAleenan, Acting Commissioner of U.S. Customs & Border Protection (collectively, "Defendants") seek a motion to dismiss.

## BACKGROUND

### I.    Drawback Statute

      Drawbacks are refunds of a customs duty, fee, or internal revenue tax paid on imported merchandise.  19 C.F.R. § 191.2(i) (2010).  Section 313 of the Tariff Act of 1930, as amended, provides the statutory framework for claiming a drawback. 19 U.S.C. § 1313 (2016).[1]  Drawbacks are available where, inter alia, imported goods are directly used in producing a good for export, id. § 1313(a) ("direct identification drawbacks"), imported and substitute goods of the "same kind and quality" are used to produce goods for both domestic use and export, id. § 1313(b); 19 C.F.R.

---

[1] Unless otherwise indicated, all citations to the Tariff Act of 1930 are to relevant portions of Title 19 of the U.S. Code, as amended by the TFTEA.

§ 191.2(x)(1) ("substitution manufacturing drawbacks"), imported goods do not conform to specifications and are exported, 19 U.S.C. § 1313(c) ("rejected merchandise drawbacks"), imported goods are exported without having been used in the United States, id. § 1313(j)(1)(A)(i) ("unused merchandise drawbacks"), and "substituted" goods are exported without having been used in the United States, id. § 1313(j)(2) ("substitution unused merchandise drawbacks").  Prior to the implementation of CBP's interim guidance document, all drawback claims were filed under the pre-TFTEA version of 19 U.S.C. § 1313, and all claims were processed according to the regulations codified in Part 191 of Title 19 of the Code of Federal Regulations.  As part of this, 19 C.F.R. § 191.92 permits CBP to offer qualifying claimants accelerated payment of estimated drawback claims.  To receive accelerated payment of drawback claims, the claimant must be approved by the agency and must satisfy additional statutory and regulatory requirements, such as "correctly calculat[ing] the amount of drawback due."   See 19 C.F.R. §§ 191.51(b)(1), 191.92(a)(1), 191.92(b)(3).

## II.    The Trade Facilitation and Trade Enforcement Act of 2015

On February 24, 2016, Congress enacted the TFTEA.  The Trade Facilitation and Trade Enforcement Act of 2015, Pub. L. No. 114-125, 130 Stat. 122 (2016).  Section 906 of the TFTEA amended the drawback statute.  The key amendments included: (1) changing the test used for substitution manufacturing drawbacks under 19 U.S.C. § 1313(b), TFTEA § 906(b); (2) changing the commercial interchangeability test for substitution unused merchandise drawbacks, id. § 906(e); and (3) expanding the period for filing drawback claims under 19 U.S.C. § 1313(j)(2), id. § 906(j).  These changes were intended to make drawback applications less burdensome on both claimants and CBP.  See Defendants' Memorandum in Support of its Motion to Dismiss and

Opposition to Plaintiffs' Motion for Preliminary Injunction: Defendant's Exhibit 1, ECF No. 23-2, ¶ 5 (Apr. 13, 2018) ("Whittenburg Decl.").

Under the pre-TFTEA framework, claimants typically calculated drawback claims based on the invoice values of the imported merchandise. Whittenburg Decl. ¶ 6. Because invoices are not standardized, this lengthened the review process. See id. The TFTEA permitted the U.S. Secretary of the Treasury ("Treasury") to adopt new regulations standardizing the drawback process by migrating from the invoice system to an automated system based on "average per unit duties, taxes, and fees." TFTEA § 906(g)(l)(2)(B)–(C). In addition to improved processing efficiency, Plaintiffs anticipate that drawback claimants "stand[] to benefit from the new substitution rules and expanded time limits contained in the TFTEA . . . ." Motion for Preliminary Injunction: Plaintiffs' Exhibits A–E, ECF No. 13-1, at A ¶ 5, B ¶ 5, C ¶ 5, D ¶ 5, E ¶ 5. (Mar. 23, 2018) ("Pls. Exs."); see also id. at F ¶ 5, G ¶ 5, H ¶ 5 (discussing anticipated benefits under the TFTEA).

Congress provided the Treasury two years from the enactment of the TFTEA to promulgate regulations implementing the TFTEA's drawback amendments. TFTEA § 906(g)(l)(2)(A). Treasury was unable to meet the two-year deadline, which lapsed on February 24, 2018. To date, Treasury has yet to publish final regulations implementing the TFTEA's drawback amendments. As of April 6, 2018, however, Treasury has created a draft regulatory package in the form of a Notice of Proposed Rulemaking ("NPRM") and has transmitted that regulatory package to the Office of Management and Budget ("OMB") for interagency review. See Defendants' Memorandum in Support of its Motion to Dismiss and Opposition to Plaintiffs' Motion for Preliminary Injunction, ECF No. 23-1, at 3. (Apr. 13, 2018) ("Defs. Br."). The period for interagency review is 90 days, Exec. Order No. 12,866, 58 Fed. Reg. 51,735, at § 6(b)(2)(B) (Sept.

30, 1993) ("Exec. Order No. 12,866"), after which public notice-and-comment will commence,
<u>see</u> Oral Argument, ECF No. 29, at 19:00–19:07 (May 7, 2018) ("Oral Arg."); Defs. Br. at 10.

Following the two-year rulemaking period, TFTEA provides for a transition year,
beginning February 24, 2018, and ending February 23, 2019.  TFTEA § 906(q)(1)(B).  During this
time claimants may elect to file drawback claims under 19 U.S.C. § 1313, as it was pre-TFTEA,
or under that statutory provision, as amended by the TFTEA.  TFTEA § 906(q)(3).

### III.    Interim Guidance Document

On February 5, 2018, CBP published the first version of a Guidance Document created to
inform the trading community of interim procedures for filing TFTEA drawback claims during the
transition year. U.S. CUSTOMS AND BORDER PROTECTION, DRAWBACK: INTERIM GUIDANCE FOR
FILING TFTEA DRAWBACK CLAIMS, VERSION 1 (2018) ("Guidance Document: Ver. 1").  The third
version of the Guidance Document was published on March 26, 2018.  <u>See generally</u> U.S.
CUSTOMS AND BORDER PROTECTION, DRAWBACK: INTERIM GUIDANCE FOR FILING TFTEA
DRAWBACK CLAIMS, VERSION 3 (2018) ("Guidance Document").[2]  The Guidance Document
indicates CBP will neither process nor liquidate transition year drawback claims until new
regulations are developed by Treasury, published in a NPRM, subjected to notice and comment,
and issued as final rules.  Guidance Document at 15.  The Guidance Document mentions new filing
restrictions that were not in the TFTEA, such as the "first-filed" and "mixed use" rules.  Guidance
Document at 2, 6, 15–16; <u>see also</u> Plaintiffs' Memorandum in Support of its Motion for
Preliminary Injunction, ECF No. 14, at 29 (Mar. 23, 2018) ("Pls. Br.").  The "first-filed" rule limits
drawback claimants to designating goods from an import entry line item to <u>either</u> direct
identification <u>or</u> substitution drawback claims.  Guidance Document at 6.  Similarly, the 'mixed

---

[2] Unless otherwise specified, all citations to the Guidance Document refer to Version 3.

use' rule provides that claimants can only make substitution-based drawback claims under the

TFTEA if the entry summary line on which that claim is based was not previously the subject of a

drawback claim filed under the pre-TFTEA statute.  Guidance Document at 2, 15-16.

On March 23, 2018, Plaintiffs commenced this case and moved for a preliminary

injunction.  Motion for Preliminary Injunction, ECF No. 13, at 1 (Mar. 23, 2018).  On April 13,

2018, Defendants responded to Plaintiffs' motion and filed a cross-motion to dismiss the action.

See Defs. Br. at 1.  Oral argument on Plaintiffs' motion was held on May 7, 2018, during which

Plaintiffs' motion was denied without prejudice.  Oral Arg. at 1:02:27–1:02:50.  Thereafter, the

court permitted parties to file supplemental briefs concerning the merits of Count V of Plaintiffs'

Complaint.  Plaintiffs' Supplemental Briefing Addressed to Count V of the Complaint, ECF No.

32 (May 21, 2018) ("Pls. Supp. Br."); Defendants' Supplemental Brief, ECF No. 33 (June 4, 2018)

("Defs. Supp. Br.").  This opinion addresses both Plaintiffs' motion for preliminary injunction and

Defendants' motion to dismiss.

**JURISDICTION AND STANDARD OF REVIEW**

Under the Administrative Procedure Act ("APA"), "[a] person suffering legal wrong

because of agency action . . . is entitled to judicial review thereof."  5 U.S.C. § 702 (1976).  The

"agency action" implicated in this case is the implementation of CBP's Guidance Document.  The

alleged legal wrongs resulting from this action are Defendants' failure to provide Plaintiffs with

notice and an opportunity to comment upon:  (1) suspension of existing drawback regulations; (2)

the de facto revocation of Plaintiffs' accelerated payment licenses; and (3) newly created drawback

"rules."  Pls. Br. at 2–3 (citing 5 U.S.C. §§ 551(4), 553, 558(c); 19 C.F.R. § 191.92(f)).

Yet, "the APA is not a jurisdictional statute and . . . does not give an independent basis for

finding jurisdiction in the Court of International Trade."  Am. Air Parcel Forwarding Co. v. United

States, 718 F.2d 1546, 1552 (Fed. Cir. 1983) (citing Califano v. Sanders, 430 U.S. 99, 107 (1977)).

"Thus, the Court of International Trade must have its own independent basis for jurisdiction under

28 U.S.C. § 1581 . . . ."   Shinyei Corp. of Am. v. United States, 355 F.3d 1297, 1304 (Fed. Cir.

2004).   Here, the court's basis for jurisdiction is 28 U.S.C. § 1581(i)(4), as it relates to 28 U.S.C.

§ 1581(i)(1).   Together, these statutes grant the court "jurisdiction of any civil action commenced

against the United States, its agencies, or its officers, that arises out of any law of the United States

providing for--administration and enforcement with respect to[, inter alia, import revenues]."   28

U.S.C. § 1581(i)(1), (i)(4).   Plaintiffs challenge CBP's "administration and enforcement" of the

duty drawback provisions, which are a feature of import revenue collection.

Defendants contend, however, that the action is not ripe for judicial review because the

Guidance Document is "a non-final policy statement."   Defs. Br. at 19–29.[3]   The court does not

have jurisdiction over claims that are not ripe.   See, e.g., NSK Ltd. v. United States, 510 F.3d 1375,

1384–85 (Fed. Cir. 2007).   Generally, where the challenged agency action is not final, Plaintiffs

claim is not ripe.   Two conditions must be satisfied for agency action to be final:   first, the action

must mark the "consummation" of the agency's decision-making process.   The action here,

promulgation and implementation of the terms of the Guidance Document, "must not be of a

merely tentative or interlocutory nature."   Tokyo Kikai Seisakusho, Ltd. v. United States, 529 F.3d

1352, 1362 (Fed. Cir. 2008) (citing Bennett v. Spear, 520 U.S. 154, 177–78 (1997)).   Second, the

---

[3] Although Defendants' Motion to Dismiss contended that Counts I through IV were all unripe,
Defs. Br. at 19–29, Defendants later indicated at oral argument that their ripeness arguments
were primarily aimed at Counts III and IV, Oral Arg. at 3:04–3:56.   Regardless, the court's
jurisdictional analysis applies to all Counts, as all Counts concern the same action:
implementation of the terms of the Guidance Document in lieu of final regulations pursuant to
the APA.   Counts III and IV, however, have been mooted by post-Complaint concessions.   See
infra, Part II(2).

action must be one by which "rights or obligations have been determined," or from which "legal consequences will flow."  Id.

Defendants first argue that the agency action is not final, because it will only remain in place until final regulations are promulgated.  See Defs. Br. at 28–29.  The court disagrees. Although labeled an "interim" measure, the Guidance Document consummates the agency's decision-making process.  The Guidance Document prescribes CBP's current approach to all drawback claims under the TFTEA; in other words, its rules are currently in force.  See Whittenburg Decl. ¶ 14; Guidance Document at 5.  That these rules will likely change does not make them "tentative" within the meaning of the test for final agency action.  Rather, CBP has already integrated rules laid out in the Guidance Document into its current practice.

Furthermore, these now-effective rules from the Guidance Document impact Plaintiffs' substantial rights.  TFTEA Section 906 required that its drawback amendments take effect and implementing regulations prescribing TFTEA drawback calculation methods be promulgated by February 24, 2018.  TFTEA § 906(g)(l)(2)(A), (q)(1)(B), (q)(3)(B).  As implementing regulations have not yet been promulgated, the Guidance Document operates to indefinitely dictate Plaintiffs' drawback rights under the TFTEA – the de facto "legal consequence" being that, despite the TFTEA having taken effect, all processing of TFTEA drawback claims has been suspended.[4] Guidance Document at 9–10; Whittenberg Decl. ¶ 19.

---

[4] Despite now arguing that Plaintiffs can claim no right to have their TFTEA drawback claims processed, Defendants' Reply Memorandum in Support of its Motion to Dismiss, ECF No. 27, at 7–8 (May 3, 2018) ("Defs. Reply Br."), CBP's position prior to this litigation was that TFTEA drawback provisions should have been fully implemented by February 24, 2018, see, e.g., U.S. CUSTOMS AND BORDER PROTECTION, DRAWBACK SIMPLIFICATION NEWSLETTER, at 1 (Nov. 2017), available at https://www.cbp.gov/sites/default/files/assets/documents/2017-Nov/TFTEA-DrawbackNews_November_0.pdf ("The Act provides CBP with two-years from the date of enactment to fully implement the new law. As such, the changes promulgated by the Act will not

In sum, the agency action at issue is final and affects Plaintiffs' substantial rights.  Thus,

Plaintiffs' claims are ripe, and the court has jurisdiction over this case.  Relevant to this action, the

court will uphold Defendants' actions unless they are "found to be-- (A) arbitrary, capricious, an

abuse of discretion, or otherwise not in accordance with law . . . [or] (D) without observance of

procedure required by law[.]"  5 U.S.C. § 706(2) (1966); see also Nat'l Customs Brokers &

Forwarders Ass'n of Am., Inc. v. United States, 18 C.I.T. 754, 758–59, 861 F. Supp. 121, 127

(1994), aff'd, 59 F.3d 1219 (Fed. Cir. 1995).  The court will furthermore "compel agency action

unlawfully withheld or unreasonably delayed[.]"  5 U.S.C. § 706(1).

## DISCUSSION

## I.      Motion for Preliminary Injunction Denied

Pursuant to USCIT R. 65(a), Plaintiffs seek a preliminary injunction to enjoin Customs

from suspending or limiting:  (1) the operation of 19 C.F.R. § 191.92, which is the regulation

governing accelerated payment of drawback claims; and (2) individual drawback claimants'

approval to receive accelerated payments pursuant to that regulation.[5]  Pls. Br. at 1–2.  To obtain

a preliminary injunction, Plaintiffs must demonstrate, inter alia, that absent a preliminary

injunction, Plaintiffs will suffer immediate, irreparable harm.  See Zenith Radio Corp. v. United

States, 710 F.2d 806, 809 (Fed. Cir. 1983).  "Failure of an applicant to bear its burden of persuasion

---

take effect until Feb. 24, 2018, applying to drawback claims filed on or after that date.") (one of
a series of monthly newsletters published between January and November 2017, all featuring
similar language).

[5] Aspects of the injunction sought by Plaintiffs which the court finds have been mooted, e.g.,
those related to the "first-filed" and "mixed use" rules, are fully discussed below.  See Pls. Br. at
29–36; Part II(2), infra.  Nevertheless, the evidentiary defects discussed herein apply equally to
these mooted grounds.  As Plaintiffs have not substantiated their claims of irreparable harm due
to the alleged wholesale suspension of accelerated payment for all TFTEA claims, Plaintiffs have
a fortiori not done so as regards CBP's allegedly improper adoption of certain procedural rules
applicable to TFTEA drawback claims.

on irreparable harm is ground to deny a preliminary injunction, and the court need not conclusively

determine the other criteria." Corus Grp. PLC v. Bush, 26 C.I.T. 937, 942, 217 F. Supp. 2d 1347,

1353 (2002), aff'd in part sub nom. Corus Grp. PLC. v. Int'l Trade Comm'n., 352 F.3d 1351 (Fed.

Cir. 2003).  Irreparable harm is potential injury that cannot be redressed by a legal or equitable

remedy at the conclusion of the proceedings.  See Weinberger v. Romero–Barcelo, 456 U.S. 305,

312 (1982).  In evaluating irreparable harm, the court considers: "the magnitude of the injury, the

immediacy of the injury, and the inadequacy of future corrective relief."  CannaKorp, Inc. v.

United States, 234 F. Supp. 3d 1345, 1350 (CIT 2017).

Both importer Plaintiffs and broker Plaintiffs allege that implementation of the drawback

procedures described in CBP's Guidance Document will seriously harm their cash flow and

profitability.    Broker  Plaintiffs  contend  they  will  lose  revenues  derived  from  drawback

commissions, whereas importer Plaintiffs argue that delayed drawback payments, without interest,

will tie up excessive funds.  See Pls. Br. at 37–38.  Plaintiffs, however, have provided little

evidence to substantiate these allegations.  Plaintiffs called no witnesses at the May 7, 2018,

preliminary injunction hearing, during which this motion was first denied, and have supplied no

witnesses since.  For proof, Plaintiffs rely upon a series of affidavits from Plaintiffs' corporate

officers.  See Pls. Exs. at A–H.  Although some broker Plaintiffs' officers suggested a risk of

bankruptcy under the interim arrangement, see id. at F ¶ 6, G ¶ 7, H ¶ 6,[6] neither broker Plaintiffs'

nor importer Plaintiffs' affidavits contain the financial specifics necessary to establish the concrete

harm expected from the interim scheme, id. at A ¶ 3, B ¶ 3, C ¶ 3, D ¶ 3, E ¶ 3, F ¶ 5–7, G ¶ 5–7,

---

[6] Respectively, drawback payments are [[100%, 93%, and 50-60%]] of Alliance Customhouse
Brokers, Inc., C.J. Holt & Company, Inc., and Customs Advisory Service, Inc.'s monthly revenues.

H ¶ 5–7.[7]  Bare assertions from interested parties are generally insufficient to justify finding irreparable harm.  See Shandong Huarong Gen. Grp. v. United States, 24 C.I.T. 1286, 1290 (2000).

Furthermore, CBP is not suspending all accelerated payments.  Rather, drawback claims filed under the new statute, TFTEA, are being placed on hold until the TFTEA's implementing regulations are passed.  Guidance Document 5, 12.  During the transition year, claimants with drawback claims that qualify under the old version of 19 U.S.C. § 1313 are free to file their claims under that law, and CBP will continue to provide accelerated payment of those claims.  TFTEA § 906(q)(3); Guidance Document 5, 12.

Plaintiffs have not provided sufficient evidence that their respective businesses face imminent, irreparable harm, such that the court should enjoin CBP to immediately allow accelerated payments of TFTEA drawback claims.  Given that claimants retain the option to receive drawback claims by filing under the old statute, Plaintiffs have not demonstrated that the delay in processing drawback claims filed under the TFTEA constitutes irreparable harm.  Although broker Plaintiffs have arguably presented generalized evidence of economic injury, that alone is insufficient.  See S.J. Stile Assocs. v. Snyder, 66 C.C.P.A. 27, 30, 646 F.2d 522, 525 (1981).  Because Plaintiffs fail to meet their burden to prove irreparable harm, the court need not reach Plaintiffs' other arguments with respect to the preliminary injunction.  See id.; Altx, Inc. v.

---

[7] For example, two broker Plaintiffs suggest that if half their clients opt to file for drawbacks under the TFTEA, which would not allow for accelerated payment under the interim Guidance Document, half of the broker Plaintiffs' commission-based revenue would be severely delayed. Pls. Exs. at G ¶ 7, H ¶ 6.  Aside from using the same boilerplate language that each broker is "transitioning many of its clients to filing TFTEA drawback," id. at F ¶ 5, G ¶ 6, H ¶ 5, however, the affiants provide no indicia of how likely it is that a large proportion of their clients would opt for TFTEA drawback.

United States, 26 C.I.T. 735, 738, 211 F. Supp. 2d 1378, 1381 (2002). Accordingly, Plaintiffs'

motion is denied.

**II.      The Merits of Plaintiffs' Claims and Defendants' Motion to Dismiss**

Plaintiffs contend that CBP, in issuing the Guidance Document, has failed to comply with

the rulemaking requirements of the Administrative Procedure Act ("APA") in several respects.

Count I alleges that the Guidance Document unlawfully amends 19 C.F.R. § 191.92, which

provides accelerated payment privileges. See Pls. Br. at 13–24. Count II alleges that approval to

accept accelerated payments is a license that cannot be suspended without observing regulatory

procedures in 19 C.F.R. § 191.92(f) and APA procedures in 5 U.S.C. § 558. See Pls. Br. at 24–29.

Counts III and IV allege that CBP unlawfully adopted "first-filed" and "mixed use" rules

applicable to TFTEA drawback claims. See Pls. Br. at 29–36. Count V alleges that Secretary

Mnuchin has unlawfully withheld required agency action, and requests a court order directing

Treasury to promulgate regulations for calculating drawback claims under the TFTEA. See Pls.

Br. at 2; Pls. Supp. Br. at 2.

**1.      Counts I and II:  Plaintiffs Fail to State a Claim against the United States.**

In Counts I and II, Plaintiffs allege that, in refusing to process accelerated payments under

the TFTEA, Defendants have unlawfully limited Plaintiffs' right to claim accelerated payments

and thus partially revoked Plaintiffs' approval to accept accelerated payments under 19 C.F.R. §

191.92. See Pls. Br. at 13–29; 19 C.F.R. 191.92(a), (f). The current version of Section 191.92

was created under the pre-TFTEA version of 19 U.S.C. § 1313, but the accelerated payment

process is exclusively a creature of regulation. 19 U.S.C. § 1313 has not mandated accelerated

drawback payments, either before or after the TFTEA. See 19 U.S.C. § 1313(r) (2008); TFTEA §

906(j).

Under the Guidance Document, CBP will apply Section 191.92, unchanged, to drawback claims filed under the old version of 19 U.S.C. § 1313.  Guidance Document at 3; Oral Arg. at 5:40–5:48.  The Guidance Document does not curtail Plaintiffs' license to seek accelerated payments under that version of the statute.  Guidance Document at 5.  The Guidance Document does, however, decline to apply Section 191.92 to claims filed under the post-TFTEA version of 19 U.S.C. § 1313.  See Guidance Document at 9–10.  Plaintiffs claim a right to apply Section 191.92 to drawback claims under the TFTEA.  Pls. Br. at 21–22.  For support, Plaintiffs cite 19 C.F.R. § 191.0, which states that Part 191 "sets forth general provisions applicable to all drawback claims."  Pls. Br. at 22 (citing 19 C.F.R. § 191.0 (emphasis added)).  Assuming, without deciding, that Part 191 generally applies to TFTEA drawback claims, it is nevertheless the text of the TFTEA and Section 191.92, rather than Section 191.0's generalized scope language, which control the disposition of Counts I and II.

The "Scope" portion of Section 191.92 states:  "Accelerated payment of drawback is only available when [CBP's] review of the request for accelerated payment of drawback does not find omissions from, or inconsistencies with the requirements of the drawback law and part 191 . . . ." 19 C.F.R. § 191.92(a)(1) (emphasis added).  The "drawback law" applicable to TFTEA drawback claims is 19 U.S.C. § 1313, as modified by the TFTEA.  The TFTEA required Treasury to newly determine what calculation methods would apply to TFTEA drawback claims, TFTEA § 906(g)(l)(2), but such calculation methods have not yet been determined, Guidance Document at 7.  To this extent, Section 191.92 is inconsistent with the post-TFTEA statute, and is thus invalid as applied to TFTEA drawback claims.  See Decker v. Nw. Envtl. Def. Ctr., 568 U.S. 597, 609 (2013) ("regulations, in order to be valid, must be consistent with the statute under which they are promulgated").  Furthermore, as a practical matter, without clear calculation methods, CBP cannot

review a claimant's estimations, as required by Section 191.92, prior to the release of accelerated

payments.  19 C.F.R. § 191.92(a)(1), (b)(1)(vii); <u>see also</u> <u>id.</u> § 191.51(b)(1).  Thus, Plaintiffs cannot

currently claim a right to accelerated payment of TFTEA drawback claims under Section 191.92.

Plaintiffs' right to seek accelerated drawback payments under the old statute, however, remain

intact under the Guidance Document.   Accordingly, as in these Counts Plaintiffs have not

identified the violation of any right, the court holds that Counts I and II fail to state a claim against

the United States.

> **2.  Counts III and IV:  Plaintiffs Claims are Moot.**

In Counts III and IV, Plaintiffs contend that, through the Guidance Document, CBP

adopted the "first-filed" and "mixed use" rules in violation of APA notice-and-comment

requirements.  Pls. Br. at 29–36; <u>see also</u> Guidance Document at 15–16, 25–26.  Under the APA,

before proposed regulations can take effect, "notice of proposed rule making shall be published in

the Federal Register" and "interested persons [shall be provided] an opportunity to participate in

the rule making through submission of written data, views, or arguments . . . ."  5 U.S.C. § 553(b),

(c).  This notice-and-comment requirement "does not apply" to "interpretative rules, general

statements of policy, or rules of agency organization, procedure, or practice . . . ."  5 U.S.C. §

553(b)(A).

Although prior versions of the Guidance Document may have been ambiguous, <u>see</u>

Guidance Document: Ver. 1 at 2–3, the latest version of the Guidance Document unequivocally

indicates CBP will <u>not</u> process TFTEA drawback claims until TFTEA regulations have passed the

necessary rulemaking procedures.  Guidance Document at 25.  CBP has explained through a signed

declaration that it will not apply the challenged rules to bar any claims filed under the TFTEA until

the new regulations for implementing TFTEA are in effect.  Whittenberg Decl. ¶ 19.  Rather, all

TFTEA claims filed "before the effective date of the new implementing regulations will be held for processing until the regulations are effective, and <u>then permitted to be perfected</u> and processed in accordance with the requirements of the final effective regulations . . . ." <u>Id.</u> (emphasis added).

Plaintiffs concede that these Counts are moot if "CBP will agree to entry of a final injunction or enforceable stipulation specifying that these rules will not be applied or enforced except after APA Rulemaking." Plaintiffs' Response in Opposition to Defendants' Motion to Dismiss, and Reply in Support of Plaintiffs' Motion for a Preliminary Injunction, ECF No. 24, at 19 (Apr. 23, 2018) ("Pls. Reply Br."). The court finds an injunction unnecessary, as there is no indication CBP will enforce the challenged rules until the APA notice and comment process is complete.[8] Oral Arg. at 23:25–23:46; <u>see</u> Guidance Document at 25. Importantly, there are also indications that CBP will provide drawback claimants an opportunity to amend their drawback claims before enforcing any new rules. Oral Arg. at 20:59–21:46; Whittenberg Decl. ¶ 19; Guidance Document at 7. Regarding the challenged rules, Defendants intend to observe the notice-and-comment requirements of 5 U.S.C. § 553, and will provide Plaintiffs an opportunity to comply with any new regulations prior to enforcement thereof. Accordingly, Counts III and IV are dismissed as moot.

### 3. Count V: Plaintiff States a Claim Against the United States.

In Count V, Plaintiffs allege that Treasury unlawfully withheld rulemaking mandated by Section 906(g) of the TFTEA, which required new regulations addressing the calculation of TFTEA drawback claims. Pls. Supp. Br. at 2–7. The TFTEA states: "Not later than the date that is 2 years after the date of the enactment of the [TFTEA], the Secretary [of the Treasury] shall prescribe

---

[8] Since the transition year began, there has been only one instance wherein a named Plaintiff's drawback claim triggered an informational error associated with the "first-filed" or "mixed use" rules. Whittenberg Decl. ¶ 20. That claim, filed by Customs Advisory Services, was ultimately rejected due to errors unrelated to the "first-filed" or "mixed used" rules. <u>Id.</u>

regulations for determining the calculation of amounts refunded as drawback under this section."

TFTEA § 906(g)(l)(2)(A).  The date two years after the TFTEA's enactment was February 24,

2018.  Four months later, drawback calculation regulations have still not been published.

Defendants argue that the deadline imposed by TFTEA § 906(g) was "directory," not

"mandatory," because the statute provided no penalty for failure to comply.  Defs. Br. at 35–38.

In another case concerning the consequences of a missed statutory deadline, the Supreme Court

stated:  "In answering this kind of question, this Court has looked to statutory language, to the

relevant context, and to what they reveal about the purposes that a time limit is designed to serve.

The Court's answers have varied depending upon the particular statute and time limit at issue."

Dolan v. United States, 560 U.S. 605, 610 (2010).[9]  Here, the statutory language plainly left no

room for discretion:  "Not later than the date that is 2 years after the date of . . . enactment . . . the

Secretary shall prescribe [drawback calculation] regulations. . . ."  TFTEA § 906(g)(l)(2)(A)

(emphasis added).  Further, in Count V Plaintiffs seek only compliance with the statutory deadline,

see Pls. Reply Br. at 28, rendering recourse to a separate penalty unnecessary.  The "mandatory"

versus "directory" distinction does not govern disposition of Plaintiffs' claim where Congress has

provided a definite time-limit for regulatory action, and rights related to an entire statutory section,

in this case the post-TFTEA version of 19 U.S.C. § 1313, are being deprived due to Defendants'

failure to act within that time limit.[10]

---

[9] Dolan was not brought under the APA, but concerned the consequences of a court's failure to
determine a victim's losses and order restitution within a ninety-day statutory deadline.  Dolan,
560 U.S. at 607–08.  The language used by the Court was, however, of general application.  Id.
at 607–08, 610.

[10] Cases cited by Defendants do not compel a different outcome.  Supreme Court precedents cited
by Defendants did not assess simple deadline compliance, but instead declined to impose
additional sanctions in certain cases of non-compliance.  Defs. Br. at 36 (citing, e.g., Barnhart v.
Peabody Coal Co., 537 U.S. 149, 171–72 (2003) (considering whether to bar award of retirement

In failing to promulgate the implementing regulations by February 24, 2018, Defendants have exceeded a legislative deadline imposed by Section 906(g)(l)(2)(A).  The implementing regulations required under TFTEA § 906 have been withheld in violation of the law.[11]  See In re Paralyzed Veterans of America, 392 Fed. App'x 858, 860–61 (Fed. Cir. 2010) (unpublished); Forest Guardians v. Babbitt, 174 F.3d 1178, 1189 (10th Cir. 1999).

**4.  Remedy**

Plaintiffs have suggested a remedy of ordering Defendants to immediately process accelerated payments claims under the new statute.  Plaintiffs posit that the bonding requirements will protect the Government pending final liquidation (determination) of the drawback claims.  Pls. Reply Br. at 37.  But as indicated, see Part II(1), supra, Plaintiffs have no right to accelerated payment under the new statute.  Thus, the court declines to adopt Plaintiffs' suggested remedy.

---

benefits due to late assignment thereof); United States v. James Daniel Good Real Prop., 510 U.S. 43, 63 (1993) (considering whether to order dismissal of a customs forfeiture action where statutory timelines had been exceeded); United States v. Montalvo-Murillo, 495 U.S. 711, 721–22 (1990) (considering whether defendant should be released due to late bail detention hearing); Brock v. Pierce County, 476 U.S. 253, 265–66 (1986) (considering whether to bar recovery of federal grant funds due to late determination as to their misuse)).  The cited Federal Circuit cases likewise weighed the legality of substantive sanctions beyond simply ordering deadline compliance.  Defs. Br. at 36–37 (citing Hitachi Home Elecs. (Am.), Inc. v. United States, 661 F.3d 1343, 1347–48 (Fed. Cir. 2011) (considering whether a protest which the agency failed to allow or deny within the two-year statutory time period must be deemed allowed); Canadian Fur Trappers Corp. v. United States, 884 F.2d 563, 565–66 (Fed. Cir. 1989) (considering whether to eliminate duties on goods which the agency failed to liquidate within the 90-day statutory time period)).  Moreover, none of the foregoing cases concerned an agency's wholesale failure to issue regulations and the suspension of a statute's operation.

[11] The court is not persuaded by Defendants' attempts to recast Plaintiffs' arguments under the APA as seeking a writ of mandamus, Defs. Br. at 35, an argument Plaintiffs expressly disclaimed, Pls. Reply Br. at 29.  If, upon reviewing further submissions by the parties, the court concludes that a writ of mandamus provides the only avenue for effecting necessary relief, the court will analyze Count V under the appropriate standard.

Plaintiffs also request the court "[d]irect the Secretary of the Treasury to publish, within a reasonable time," such calculation regulations.   Complaint at 31.   The APA states:   "To the extent necessary to decision and when presented, the reviewing court shall . . . compel agency action unlawfully withheld or unreasonably delayed."   5 U.S.C. § 706(1).   Unlike Veterans of America and Forest Guardians, the court does not find the compulsion of agency action necessary to its decision, at this point.   Veterans of America involved the Secretary of Veterans Affairs' failure to issue a proposed regulation until roughly six months after the deadline for a final regulation.   392 Fed. App'x at 859 (unpublished).   Forest Guardians concerned the Secretary of Interior's failure to publish a final regulation for over "three-and-one-half years" after the statutorily-imposed deadline.   174 F.3d at 1182.   Here, Defendants commenced the regulation promulgation process slightly over one month after the statutory deadline for a final regulation.   Defs. Br. at 10.[12]   Further, Veterans of America did not foreclose the exercise of judicial discretion in such a situation.   See 392 Fed. App'x at 861 ("to the extent we may have discretion to decline ordering compliance with § 706 . . . .") (unpublished).

Considering the facts currently before the court, the court finds that Treasury is proceeding through the notice-and-comment process as expeditiously as is now possible.   If, however, the government fails to promulgate the regulation within a reasonable timeframe, for example, if it is unable to produce the proposed regulation for notice-and-comment on or about July 5, 2018, approximately 90 days after April 6, 2018, the court will consider imposing its own deadline so

---

[12] The OMB review process currently underway is not statutorily mandated, see Executive Order 12,866, and the Federal Circuit has found OMB review subordinate to statutory deadlines, see 392 Fed. App'x at 860–61 (unpublished).   In this instance, however, the 90-day window prescribed for OMB review by Executive Order 12,866, ending July 5, 2018, will likely have lapsed before any relief ordered could be implemented.   Thus, truncation of OMB review is a moot issue.

that the Congressional requirement is not abrogated through excessive delay.  If Defendants find themselves unable to promptly issue the entire regulatory package currently under consideration, the government should consider whether parts of the package which satisfy the mandate of TFTEA Section 906 can be promulgated in advance of any unresolved portions of the regulatory package.

Finally, the court may fashion other relief by which to safeguard Plaintiffs' drawback rights under the TFTEA.  See 28 U.S.C. § 1585 (1980) ("The Court of International Trade shall possess all the powers in law and equity of, or as conferred by statute upon, a district court of the United States.").  As now stated in the Guidance Document, until new regulations are promulgated, Defendants do allow Plaintiffs to file under the old version of 19 U.S.C. § 1313, and obtain accelerated drawback payments under the existing regulations.  Guidance Document at 3. Liquidation of the drawback claim occurs sometime in the future.  In addition, it appears to the court that where Plaintiffs claims may foreseeably qualify under both the old and new versions of 19 U.S.C. § 1313, Plaintiffs might be provided the opportunity to file a protective claim under the Guidance, without forfeiting the right to accelerated payment under the old version of 19 U.S.C. § 1313.  For such double filed claims, after new implementing regulations have been adopted and Defendants are able to process claims under the new version of 19 U.S.C. § 1313, Plaintiffs might elect to have final liquidation of the drawback claim proceed under the new statutory scheme, as opposed to the old.

Accordingly, the parties shall consider what remedies are administratively feasible and shall meet to discuss possible remedies.  It should soon be apparent whether regulations are forthcoming.  On July 27, 2018, Plaintiffs shall advise the court if the relief they seek has been obtained or if further order of the court is necessary.  Any government response is due August 10, 2018.

## CONCLUSION

Plaintiffs Motion for a Preliminary Injunction is **DENIED**.  Defendant's Motion to

Dismiss is **GRANTED** as to Counts I through IV, and **DENIED** as to Count V.  The parties

shall proceed as indicated in this opinion.


                 /s/ Jane A. Restani
                 Jane A. Restani, Judge

Dated: June 29, 2018
       New York, New York